[No. F017423. Fifth Dist. May 4, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH NOEL HORD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through V.

## COUNSEL

Pedowitz, Reitz-Braze & Revvill, Neal Hart Pedowitz and Jack Carson Revvill for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael Weinberger and Suzanne M. Ambrose, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, J.**—Defendant, Kenneth Noel Hord, was convicted of one count of lewd and lascivious acts committed by use of force or fear (Pen. Code, § 288, subd. (b))[1] and one count of continuous sexual abuse of a child (§ 288.5), arising from his molestations of his stepdaughter Monica. Defendant appeals, claiming numerous errors. The contentions discussed in the unpublished portion of this opinion are claims of instructional error, prosecutorial misconduct, and improper multiple convictions and consecutive sentences. Our published discussion covers defendant's claims that it was improper to prosecute him for separate offenses under sections 288 and 288.5 and that the jury committed misconduct. We affirm.

### Facts

Lori H. married defendant in 1985. Lori's two children, Monica (born June 19, 1978) and Asa, lived with them. After defendant and Lori were married, defendant began hitting Lori, Monica and Asa.

During 1989, when Monica was 11 years old, defendant threatened to beat her and caused her to remove her clothes. He touched her vaginal area with his hand and fingers. On one occasion in 1989, Monica was coming out of the shower and was covered with only a towel. Defendant told her to take off the towel. She complied out of fear, and defendant touched her while she was standing in her bedroom. On other occasions, Monica got on her bed, as directed by defendant, and defendant touched her on her vagina. While defendant was touching Monica, he told her he was just checking to see if she was a virgin. During 1989, defendant engaged in these touchings whenever Lori and Asa were gone.

In 1990, defendant continued to molest Monica. The touchings occurred sometimes two or three times a day or every couple of days. Monica had her appendix removed on February 24, 1991. The last time defendant touched her was two weeks after the removal of her appendix.

Lori testified that defendant asked her if having sex with a 12- to 13-year-old girl would hurt the girl. Defendant also asked Lori how one could tell if a female was a virgin. One time, defendant remarked to Lori that Satan told him it would not be incest if he had sex with Monica. Defendant also informed Lori that he had lifted up Monica's towel once out of curiosity. He commented to Lori that Monica was "quite a woman."

---

[1]Further code references are to the Penal Code unless otherwise noted.

*Defense*

Joyce Adams, a medical doctor, examined Monica and found no physical abnormalities which could be associated with sexual molestations.[2]

Several witnesses testified that Monica was not truthful. Edward Foust, defendant's uncle, recalled seeing Monica put her hands all over defendant; defendant pushed her away. Defendant's cousin, Sheryl Lang, testified that Lori commented to her that Lori had made "little liars" out of Monica and Asa. Reverend Robert Culver testified that he did not believe defendant was capable of doing what he was accused of.

*Rebuttal*

Pamela Murphy saw defendant on the couch one day. He called Monica to him, and Monica got under a blanket with defendant. Pamela heard Monica say, "Don't, stop it."

DISCUSSION

I.

Defendant was convicted of a lewd and lascivious act by force or threat of force (§ 288, subd. (b)) "on or about 1989" and for continuous sexual abuse (§ 288.5) "on or about 1990 to March, 1991." Monica was the victim in each instance.

Defendant asserts that pursuant to *In re Williamson* (1954) 43 Cal.2d 651 [276 P.2d 593], the People could not charge a violation of section 288 in conjunction with a section 288.5 charge. He contends the language of section 288.5 also precludes such duplication of charges and that section 288.5 is the only count which could properly be charged.

*In re Williamson, supra*, 43 Cal.2d 651, 654, provides:

" 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will

---

[2]On cross-examination, Dr. Adams testified only 20 to 30 percent of molested children display physical injuries.

be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication.' [Citations.]"

Section 288, subdivisions (a) and (b) provide:

"(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years.

"(b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

Section 288.5 provides:

"(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

"To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.

"(c) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."

As a preliminary matter, we find it helpful to trace the history surrounding the enactment of section 288.5.

*People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352] was a case involving a resident child molester. The victim gave generic testimony of repeated molestations without specifying a time, place or other particulars. Defendant was found guilty at trial of seven counts of child molestation based on this testimony. We held it was a due process violation to convict a defendant based on only the uncorroborated, unspecific testimony of the victim.

Prior to *Van Hoek*, the problems presented by resident child molestations under then-existing law were aptly addressed in the dissenting opinion in *People* v. *Martinez* (1988) 197 Cal.App.3d 767 [243 Cal.Rptr. 66], also a case from this court:

"If a child has been molested on a regular basis and in a consistent manner, e.g., 'every day when my mommy went to work,' 'every weekend when I would stay with my dad,' or 'two or three times a week when Johnny would come to visit,' the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. Obviously, the more frequent and repetitive the molestation and the younger the victim, the less likely it becomes that the prosecution can establish one or more specific acts via the testimony of the minor victim. Since many aberrant practices leave no permanent physical evidence and since children are usually molested outside the presence of witnesses, the testimony of the minor victim may be the only evidence on which the prosecution can base its case; rendering such testimony inadequate as a matter of law under circumstances like those here under discussion could effectively insulate the most egregious child molesters from prosecution." (*Id.* at p. 778 (dis. opn. of Hamlin, J.).)

In *People* v. *Luna* (1988) 204 Cal.App.3d 726 [250 Cal.Rptr. 878], we suggested that it might be time for the Legislature to redefine the crimes resulting from acts of child molestation in continuum. (*Id.* at pp. 738, 749.)

The Legislature did just that in 1989 when it enacted section 288.5. The Legislature's purpose was clear and was expressly stated.

"(a) The Legislature finds and declares that because of the court's decision in People v. Van Hoek, 200 Cal.App.3d 811, there is an immediate need for additional statutory protection for the most vulnerable among our children, those of tender years, some of whom are being subjected to continuing sexual abuse by those commonly referred to as 'resident child molesters.' These molesters reside with, or have recurring access to, a child and repeatedly molest the child over a prolonged period of time but the child,

because of age or the frequency of the molestations, or both, often is unable to distinguish one incident from another in terms of time, place, or other particulars, and as a consequence prosecutors are unable to provide the specificity of charges necessary to overcome the constitutional due process problems raised in the Van Hoek case within the framework of existing statutory law. As a consequence, some of our most vulnerable children continue to be at risk and some of our worst offenders continue to go unpunished.

"(b) It is the intent of the Legislature in enacting this act to provide additional protection for children subjected to continuing sexual abuse and certain punishment for persons referred to as 'resident child molesters' by establishing a new crime of continuing sexual abuse of a child under circumstances where there have been repeated acts of molestation over a period of time, and the perpetrator either resides with or has recurring access to the child. It is the further intent of the Legislature that the penalty for this crime shall be greater than the maximum penalty under existing law for any single felony sex offense." (Stats. 1989, ch. 1402, § 1, p. 6138.)

In 1990, after section 288.5 had been enacted, the California Supreme Court filed the case of *People* v. *Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643], in which it disapproved *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811 and other cases which followed *Van Hoek.* (*Jones, supra,* at p. 322.)

"[E]ven generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific,* albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction. (Of course, prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment.)" (*People* v. *Jones, supra,* 51 Cal.3d at p. 314.)

The Supreme Court went on to describe the necessary proof for sexual acts against children under the age of 14 years:

"The victim . . . must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g.,

'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*People* v. *Jones, supra,* 51 Cal.3d at p. 316.)

In light of the disapproval of *Van Hoek* in *People* v. *Jones, supra,* the People are no longer required to prosecute under section 288.5 in order to gain a conviction against a resident child molester when the conviction is based on "generic testimony." While section 288.5 no longer is the sole vehicle for prosecution of this type of case, prosecution under this section has not been rendered impermissible.

■ Directing ourselves to defendant's specific argument, we conclude sections 288.5 and 288 are not subject to the *Williamson* rule. "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent." (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587].) The Legislature's intent in passing section 288.5 was not to enact a specific statute to apply in lieu of a general statute. The intent was to enact a statute for an area which the Legislature believed was not covered by any other law. That this statute's necessity was nullified by the *Jones* decision does not transform this statute into a specific statute under the *Williamson* rule since this was clearly not the Legislature's intent at the time of the enactment.[3]

■ What occurred here does not violate the language of section 288.5. Section 288.5 requires that a minimum of three proscribed acts be committed against the child victim during a time period of not less than three months. It also requires that no other sex offense be charged involving the same victim unless the offense occurred outside the time period charged under section 288.5. Thus, there is no prohibition against charging a section 288.5 offense for a certain time period as long as that time period is at least three months in duration; nor is the prosecution prohibited from charging other sex crimes which occurred outside the charged time period. Charging additional crimes is not unfair. A defendant who committed a crime during an earlier time-frame or who continues to perpetrate sexual abuse for a longer period of time than that required by section 288.5 is more culpable than a defendant who perpetrates the continued abuse for a limited time.

---

[3]We further note *Williamson* has not been applied to situations in which the charges involved separate criminal acts. *Williamson* arises when one act could be charged under one of two applicable statutes.

Based upon the testimony of Monica, the prosecutor could reasonably have charged many more singular acts which would have carried the potential of a substantially greater sentence for defendant. That the prosecutor chose to exercise his discretion and charge defendant under section 288.5, subjecting defendant to a possibly lighter sentence than if the prosecution had charged a multitude of singular offenses for the time period, inures to the defendant's benefit. There is nothing in section 288.5 or in *Williamson* that precludes the charging of a violation of section 288 in combination with a section 288.5 violation so long as the crimes charged involved different time periods.

II.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI.

Defendant filed a motion for new trial based on jury misconduct. Declarations from two jurors were filed in support of the motion by the defense. Juror Alex Burgos stated:

". . . During the deliberations, it was discussed among the jurors that the defendant did not say anything and did not testify. One juror stated that the guy didn't say anything. Another juror remarked that you don't say anything to protect yourself.

". . . Also during the deliberations jurors were speculating regarding how much time the defendant would receive based on a guilty verdict.

". . . When I was approached by a family member or a friend of the defendant after the trial and was told that everyone was against the defendant, I replied that this was because the defendant did not testify."

Juror Vernon Jones stated:

"During these deliberations several jurors discussed why the defendant did not take the stand and testify. In addition, several jurors also discussed what the defendant's possible sentence would be. This was in direct contradiction to what the judge instructed the jury prior to beginning our deliberations."

The People filed points and authorities in opposition to the motion for new trial. As part of their opposition, the People obtained and filed declarations from each of the 12 trial jurors. Burgos made a new declaration and it stated in pertinent part:

---

*See footnote, *ante*, page 711.

". . . During the deliberations, the fact that the defendant did not testify was mentioned but not discussed.

". . . Also during the deliberations, we had already reached a verdict on at least one charge or count prior to what was said about if he would have have [*sic*] said anything maybe things would have been different." Jones also made a new declaration. It stated in pertinent part:

"During the Deliberations, there was a comment made about the defendant not testifying for himself. Also a Comment was made on what the defendant's sentence might be. However, in my opinion that if a man did not do what he was accused of he should say so."

The foreperson of the jury, James Bellamy, declared as follows:

". . . During the deliberations, the comment was made as to why the defendant did not take the stand.

". . . I, being foreman of the jury, interrupted and informed the jury that whether the defendant testified or not had no bearing on his guilt or innocence. This was not to be used in our decision making process. Any further discussion or talk whatsoever regarding testimony of the defendant was stopped."

Of the remaining jurors, five did not recall any comments during deliberations regarding defendant's not testifying. Of those five jurors, two did not recall any talk regarding defendant's possible sentence. The other three jurors did not mention the sentencing aspect in their declarations.

The final four jurors all recalled that a comment was made during deliberations on the fact defendant did not testify. Of those four jurors, three recalled that the foreperson advised them they could not use the information. Of those four jurors, one specifically stated he did not recall a comment on defendant's possible sentence, the other three jurors did not mention the sentencing comment in their discussions.

In *People v. Hedgecock* (1990) 51 Cal.3d 395 [272 Cal.Rptr. 803, 795 P.2d 1260], the California Supreme Court held, "[W]hen a new trial motion in a criminal case is based on allegations of juror misconduct, the trial court may conduct an evidentiary hearing to determine the truth of the allegations." (*Id.* at p. 415.) The defendant is not entitled to such a hearing as a matter of right; the trial court has discretion to hold such a hearing. (*Ibid.*) An evidentiary hearing need not be conducted in every instance of alleged

juror misconduct. (*Id.* at p. 419.) "The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Ibid.*) The California Supreme Court emphasized that "a trial court must take great care not to overstep the boundaries set forth in Evidence Code section 1150." (*Id.* at p. 418.) Section 1150 of the Evidence Code provides:

"(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

Here, defendant asserts the trial court abused its discretion in denying his request for a *Hedgecock* hearing and erred in denying his motion for new trial. Defendant contends Evidence Code section 1150 should not shield Juror Jones's statement of bias toward a nontestifying defendant. Defendant argues that the jurors' deliberate discussions of prohibited issues were misconduct that was not rebutted.

In denying the motion for a *Hedgecock* hearing, the trial court found it was undisputed that someone mentioned the issue of sentencing during the course of deliberations. Similarly, it found that during the course of deliberations someone mentioned the fact defendant did not testify. The trial court also found it undisputed the foreperson immediately and correctly advised the jurors that these issues were not proper subjects to consider or discuss. The trial court acknowledged not everyone heard these statements.

As stated by the trial court, there was no material conflict that the statements were made. The trial court accepted as true that the two improper topics were mentioned during deliberations and that some of the jurors heard the statements. The trial court also found the foreperson admonished the jury not to consider these matters.

The question here was not whether the jurors' affidavits were true; with the exception of an inadmissible statement in Jones's second declaration, the court accepted all statements made by the jurors as true, and no one disputed

them. Because the truth of the material allegations was not in question, the trial court did not abuse its discretion in denying defendant's motion for a *Hedgecock* hearing.

■ "When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry. The court must first determine whether the affidavits supporting the motion are admissible. (See Evid. Code, § 1150, subd. (a).) If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.] Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial. [Citations.] A trial court has broad discretion in ruling on each of these questions and its rulings will not be disturbed absent a clear abuse of discretion. [Citation.]" (*People* v. *Perez* (1992) 4 Cal.App.4th 893, 906 [6 Cal.Rptr.2d 141].)

As a preliminary matter we must discuss the admissibility of the affidavits on the question of jury misconduct. ■ The trial court found all the declarations were admissible with the exception of Jones's statement "in my opinion that if a man did not do what he was accused of he should say so." The trial court found this remark to be an after-the-fact statement of the juror's subjective mental processes and thus inadmissible pursuant to Evidence Code section 1150. First, we discuss whether the excluded statement of Juror Jones was admissible.

Defendant asserts Jones's entire statement should have been considered by the trial court because it demonstrated concealment of bias or prejudice. Defendant contends that "Vernon Jones made it plain that for [defendant] to receive his unbiased consideration, he had to take the stand and testify that he did not do what he was accused of doing."

■ A defendant has a right to an unbiased and unprejudiced jury. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132].) Juror affidavits may be used to prove that one or more of the jurors concealed bias or prejudice on voir dire. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 348 [78 Cal.Rptr. 196, 455 P.2d 132].) Affidavits can be used when the bias was revealed by false answers on voir dire. (*People* v. *Murphy* (1973) 35 Cal.App.3d 905, 931 [111 Cal.Rptr. 295].)

■ Defendant's argument fails. To start, the defendant has not requested that the voir dire in this case be made a part of the record. Thus, we have no way of knowing what questions were asked of Jones during jury selection or what his answers were. On the record now before us, actual concealment of bias cannot be shown.

Additionally, Jones's statement was after the fact concerning his particular state of mind and is not the type of statement which is allowed to impeach a verdict. Furthermore, Jones's statement was merely his personal opinion that an innocent person should profess his innocence. This statement does not, without speculation, imply that Jones believed a nontestifying defendant is automatically guilty or tends to be guilty. There is no indication Jones's personal opinion about how one should behave influenced his decision regarding this particular defendant. "Where the alleged misconduct is entirely speculative in nature, it is settled that the denial of a constitutional right resulting in essential unfairness must be established as a demonstrable reality, not as a matter of speculation." (*People* v. *Murphy, supra,* 35 Cal.App.3d at p. 932.) The trial court properly did not consider the after-the-fact statement by Juror Jones.

 Next, it must be determined if the declarations, absent Juror Jones's statement of personal belief, were admissible. "[E]vidence of a jury discussion on an improper topic [is] admissible as an 'overt act' provided the evidence is not directed to the subjective reasoning processes of the individual juror." (*People* v. *Perez, supra,* 4 Cal.App.4th at p. 907.) The jurors here were expressly instructed not to discuss the fact defendant did not testify and not to discuss the possible sentence. Evidence Code section 1150 expressly allows jurors to present evidence of statements made within the jury room of such a character as is likely to influence the verdicts improperly. The remaining affidavits were admissible as evidence of a jury discussion on an improper topic.

The affidavits demonstrated that two forbidden topics were brought up in jury deliberations; this constituted misconduct. The question remains whether the misconduct was prejudicial. Although misconduct raises the presumption of prejudice "[t]he presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm." (*People* v. *Hardy* (1992) 2 Cal.4th 86, 174 [5 Cal.Rptr.2d 796, 825 P.2d 781].)

In *People* v. *Perez, supra,* 4 Cal.App.4th at page 905:

"After the jury returned its verdict, [defendant] moved for funding to investigate possible jury misconduct. In support of his motion, defense counsel submitted points and authorities, stating he had questioned 'one of the jury members upon their discharge. One juror either Mr. Daniel Carr or Mr. Burt Le Vine related to defense counsel that the jury based its decision

of guilt on the fact that the defendant did not testify during the course of the defendant's trial. One of these two jurors stated that several of the jurors mentioned this fact during their deliberations.' Neither defense counsel nor any juror submitted a declaration or affidavit stating these or similar facts."

The trial court in *Perez* initially found the affidavits would not be admissible and then assumed, for the sake of argument, that all 12 jurors could say that a discussion regarding defendant's failure to testify took place. After making this assumption, the trial court in *Perez* denied defendant's motion for mistrial based on jury misconduct. The appellate court found error.

"Here, the court was asked to exercise its discretion in ruling on Perez's new trial motion. In so doing the court accepted a worst case scenario, explicitly assuming all jurors discussed Perez's failure to testify. In effect, the court envisioned the jury had explicitly or implicitly agreed to disregard the court's express instruction not to consider or discuss Perez's failure to take the witness stand. . . . [E]vidence of a jury's explicit or implicit agreement to violate a court's instruction does not touch upon the juror's subjective reasoning processes, since . . . such agreement in and of itself constitutes misconduct. (See *DiRosario* v. *Havens* [(1987)] 196 Cal.App.3d [1224, 1235 (242 Cal.Rptr. 423)] ['if the jurors in this case made their decision based upon an intentional collective disregard of [a jury instruction] . . . then such activity would be grounds for seriously considering reversal of the judgment']; *People* v. *Elkins* (1981) 123 Cal.App.3d 632, 638 . . . [finding juror affidavits inadmissible since the declarations failed to 'indicat[e] . . . any open discussion or agreement among the jurors evidencing a deliberate refusal to follow the court's instructions']; . . .)" (*People* v. *Perez, supra*, 4 Cal.App.4th at p. 908, fns. omitted.)

The appellate court reversed, finding the trial court "denied the motion on a factual scenario presumptively establishing prejudicial jury misconduct." (*Perez, supra*, 4 Cal.App.4th at p. 909.) The cause was remanded for further proceedings; the opinion directed the trial court not to assume that 12 jurors actually discussed defendant's failure to testify but to require defense counsel to obtain declarations from the jurors on the subject of inquiry. (*Ibid.*)

The present case is distinguishable from *Perez*. Here, some but not all jurors heard mentioned during deliberations that defendant did not testify, and some but not all jurors heard mention of defendant's possible sentence. There is no indication in the declarations presented to the trial court here "of any open discussion or agreement among the jurors evidencing a deliberate refusal to follow the court's instructions." (*People* v. *Elkins* (1981) 123 Cal.App.3d 632, 638 [176 Cal.Rptr. 729].)

When jury deliberations have been infiltrated with a matter which is prohibited, one must look at the nature of what has improperly infiltrated the procedure and the possibility of prejudice. In *Johns* v. *City of Los Angeles* (1978) 78 Cal.App.3d 983 [144 Cal.Rptr. 629], a juror said he wondered how long the lawyers shopped around to get a Black judge. (*Id.* at p. 991.) The appellate court found no error. The juror's comment was a "transitory or momentary expression of pique with the judge." (*Id.* at pp. 995-996.) No bias against the defendant was demonstrated by the comment.

A passing reference to an inappropriate matter was held not to be prejudicial in *Stark* v. *City of Los Angeles* (1985) 168 Cal.App.3d 276, 288 [214 Cal.Rptr. 216], a personal injury case involving a collision between a police pursuit vehicle and plaintiff's car. There, the affidavit of one juror showed another juror had made passing reference to her knowledge of the existence of other police codes. (*Ibid.*)

In *Young* v. *Brunicardi* (1986) 187 Cal.App.3d 1344, 1352 [232 Cal.Rptr. 588], jurors' comments wondering where the money would come from if the jury found in favor of plaintiff were found not to be prejudicial. By contrast, a juror who was a former police officer informed the other jurors of his understanding on a point of law, which happened to be erroneous; this extrarecord material was held to be prejudicial. (*Id.* at pp. 1349-1352.)

Where the misconduct is not "inherently likely" to have affected the vote of any of the jurors, prejudice is not shown. (*People* v. *Hill* (1992) 3 Cal.App.4th 16, 38 [4 Cal.Rptr.2d 258], citing *People* v. *Marshall* (1990) 50 Cal.3d 907, 950-951 [269 Cal.Rptr. 269, 790 P.2d 676].) In *Hill*, the appellate court determined that references in the jury room to penalty were not material to the issues presented to the jury. (*People* v. *Hill, supra*, at p. 37.)

Here, during deliberations there was a comment or comments made about defendant's not testifying and a comment regarding defendant's sentence. Although these matters were not to be discussed, the discussion was very different than when a juror performs experiments or brings in new law or facts into deliberations. The jury was obviously well aware here that defendant did not testify and equally aware that he would be punished if the jury found him to be guilty. Thus the comments did not interject any new material into deliberations that was not already known by the jury from the trial itself. Transitory comments of wonderment and curiosity, although

misconduct, are normally innocuous, particularly when a comment stands alone without any further discussion. The fact that only some of the jurors recalled the comments tends to indicate that this was not a discussion of any length or significance.

When comments go beyond natural curiosity and their content suggests inferences from forbidden areas, the chance of prejudice increases. For example, if a juror were to say, "The defendant didn't testify so he is guilty," or "we will have to find the defendant guilty of the greatest charges to ensure he will be adequately punished," the comments go beyond mere curiosity and lean more toward a juror's drawing inappropriate inferences from areas which are off limits. Such comments are more likely to influence that juror and other jurors.

In Burgos's initial declaration, he recited a juror's oblique remark about a party not saying anything to protect himself. Although this comment may have carried a greater potential for prejudice than a mere statement of curiosity, in light of the record before us it does not require reversal. It does not appear that there was a lengthy discussion about the two inappropriate areas or that there was a movement to disobey the court's instructions. The comments did not involve extra record material but were regarding matters already obvious to the jurors. More importantly, the foreperson admonished his fellow jurors and reminded them they could not consider defendant's not testifying during deliberations.

In *Krouse v. Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], Justice Mosk, in a concurring and dissenting opinion, expressed his concerns with this area:

"I foresee the likelihood of all unsuccessful litigants, plaintiffs and defendants alike, canvassing jurors hereafter as a matter of policy, in the fond hope of discovering some forbidden element that may have inadvertently crept into jury discussions. Motions thereafter made on the basis of such discovery will seriously impede the expeditious administration of justice." (*Id.* at p. 85 (conc. and dis. opn. of Mosk, J.).)

Here, forbidden elements inadvertently crept into jury discussions. However, there is no substantial likelihood that defendant suffered actual harm.

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied May 24, 1993, and appellant's petition for review by the Supreme Court was denied August 11, 1993.