[No. B088050. Second Dist., Div. Three. Nov. 27, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIAN JOSE VASQUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*The introduction, Factual and Procedural Background, Contentions, part 1 of the Discussion, and the Disposition are certified for publication.

**COUNSEL**

Raymond L. Girard, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Zaven V. Sinanian, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSKEY, J.**—Julian Jose Vasquez appeals from the judgment convicting him of continuous sexual abuse of a child (count 1; Pen. Code, § 288.5),[1] and two counts of sexual battery (counts 2 and 3; § 243.4, subd. (d).) Vasquez was charged by information with the offense and with four additional counts of sexual battery. He was tried by a jury and convicted of three counts. The jury was unable to reach a verdict as to two of the counts of sexual battery, and two other counts were dismissed by the court. Vasquez was sentenced to the upper term of 16 years in the state prison for continuous sexual abuse of a child. He was sentenced to 180 days in the county jail for each count of sexual battery, to be served in the state prison concurrently with the sentence on count 1.

The trial court erred in failing to instruct that the jury must agree unanimously which acts of sexual battery were committed by the defendant. His convictions of sexual battery must therefore be reversed. However, we find no other prejudicial errors, or misconduct or ineffectiveness of counsel. Thus, in all other respects, the judgment is affirmed.

---

[1]Unless otherwise noted, further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The Prosecution Case.*

a. *Sexual Abuse of April G. (Count 1)*

April G., the daughter of Vasquez's wife, Darlene, by a former marriage, was born on April 12, 1981. Darlene and Vasquez were married on May 22, 1988. Between May of 1988 and early 1989, Vasquez, Darlene and April lived together in Buena Park. In early 1989, April went to live with her father. In January of 1989, Darlene gave birth to the couple's first child, Krystal. April returned to the Vasquez household in approximately July of 1989. One day, while April was living with Vasquez and Darlene in Buena Park, and while Darlene was out of the apartment at work, April lay down to take a nap on the couch; when she awoke, she discovered that her underwear had been removed. Thereafter, on approximately 10 occasions while Darlene was out of the apartment, Vasquez touched April through her clothing while he was completely naked; at first, he would rub the outside of her legs, but later, he began rubbing them on the inside, and yet later, rubbed her private areas.

April never told her mother what Vasquez was doing to her, but in August of 1989, she reported to the staff at her summer camp that Vasquez was molesting her. She was consequently removed from the Vasquez home, placed in a facility called Orangewood for one or two weeks, and then released to the custody of her father, where she remained until the early summer of 1991.

By the summer of 1991, Vasquez and Darlene were living in a house which they had purchased in Bellflower, and April went to spend the summer with them. During her stay, Vasquez began taking April downstairs at night while Darlene was sleeping. He would be dressed in a wrap-around towel; he would undress April and fondle her private areas until he had an erection, then would require her to masturbate him until he ejaculated. April could not remember when these acts began, but once they began, they occurred every night, or a total of more than 30 times. Sometimes April would pretend to be asleep, so that Vasquez would not disturb her, but he proceeded to molest her anyway.

In addition to her generic descriptions of typical acts, April testified to four specific incidents in Bellflower that stood out in her memory. Once, while watching a pornographic videotape, Vasquez took off April's clothes and fondled her and himself. On another occasion, in the daytime while

Darlene was out of the house, Vasquez told April she would get a "whooping" if she did not remove her clothes, lie across the bed, then sit up and make Vasquez ejaculate. Once, at night, while Darlene was upstairs sleeping, Vasquez tried to put his penis in April's mouth, but she prevented this by keeping her mouth closed. He once placed his finger on, but not in, her vagina; this was painful.

Sometime between August and October of 1991, April ran away from the Bellflower home, because she was "tired of [Vasquez] making [her] do those things." She left at midnight and walked three or four miles to her aunt's home in Long Beach, arriving at approximately 1:15 in the morning. The next day, she returned to live with her father.

In October of 1991, April was interviewed by Detective Margaret Wagner of the Los Angeles County Sheriff's Department. April drew her a picture of an undressed Vasquez, indicating that he was uncircumcised. Vasquez admitted in an interview with Wagner and on cross-examination at trial that he was uncircumcised.

### b. Sexual Battery of Keisha M. (Counts 2 and 3)

Keisha M. began babysitting for Darlene and Vasquez in the summer of 1992. By this time, the Vasquezes had a second child, Jeremi. During Keisha's first night on the job, Vasquez called her upstairs and, when she arrived, tried to kiss her. A few days later, Vasquez asked Keisha to place her hands behind her head so he could demonstrate certain routines he used in his work as a security officer. When she did so, he fondled her breast.

By summer of 1993, the Vasquezes had moved from Bellflower to Victorville, and Keisha went to babysit for them there. One day, while Keisha was at the Victorville home, she was showering, and Vasquez asked her to unlock the bathroom door, so he could get something from the bathroom that he needed immediately. She did so, and then got back into the shower. Vasquez entered the shower with her and held her around the waist. On another occasion, Keisha was leaning over, attempting to fix a VCR in Vasquez's bedroom, when he put his hand up her skirt and rubbed her. On another occasion, Vasquez approached Keisha as she sat on a couch, exposed himself and lay on top of her. On several occasions while Keisha slept, Vasquez would enter her room, put his hands in her underwear and lie down on top of her.

In June of 1993, Darlene learned what Vasquez had been doing to Keisha. At this time, divorce proceedings were pending between Darlene and

Vasquez. After locating Keisha, Darlene took her to be interviewed by Detective Wagner, the police officer who had interviewed April the preceding fall.

## 2. *The Defense*

Vasquez testified in his own behalf and denied all of the conduct charged by April and Keisha. Raynold Desmarets, a fellow security police officer, testified that Vasquez was a "pretty straight person" and was truthful. However, he conceded that Vasquez had been suspended from work on two occasions for conduct unbecoming an officer. Desmarets did not believe Vasquez was capable of molesting a 10-year-old child.

Based upon the foregoing evidence, the jury convicted Vasquez of one count of continuing sexual abuse of April and two out of five charged counts of sexual battery of Keisha. This timely appeal followed.

### CONTENTIONS

Vasquez contends that: (1) the evidence was insufficient to establish continuous sexual abuse of at least three months' duration; (2) the court erred by failing to instruct the jury with CALJIC No. 17.01 (requirement of jury unanimity) with respect to all counts charged in the information; (3) the prosecution's delay in filing the charges of continuous sexual abuse were unjustified and deprived him of his due process right to a fair and speedy trial; (4) the prosecuting attorney committed misconduct by eliciting inadmissible evidence that Vasquez refused to take a polygraph examination, and the trial court erred by allowing such evidence to be introduced; (5) Vasquez was ineffectively represented by counsel; (6) the court relied upon improper factors in imposing the upper term of imprisonment.

### DISCUSSION

### 1. *Sufficiency of the Evidence*

Vasquez first contends his conviction of continuous child abuse was not supported by substantial evidence, because the evidence establishes that April resided with him for only two months in 1989 and fails to establish that, when she again resided with him in 1991, she remained there for the three months required by section 288.5. While Vasquez correctly characterizes the evidence, his argument that it does not support his conviction depends upon an assumption that section 288.5 is violated only if a defendant resided with, or had recurring access to, the victim for a single

*continuous* period of three months or more. As we shall explain, this is not a reasonable construction of the statute.

Vasquez contends section 288.5 includes as a necessary element three *continuous* months of access to the child, citing for this proposition *People* v. *Hord* (1993) 15 Cal.App.4th 711 [19 Cal.Rptr.2d 55] and *People* v. *Higgins* (1992) 9 Cal.App.4th 294 [11 Cal.Rptr.2d 694] and the dissent in *People* v. *Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643]. These cases are not compelling authority for Vasquez's construction of the statute. In his dissent in *Jones,* Justice Mosk compares section 288.5 with section 288, the statute at issue in that case, and describes section 288.5 as requiring "that the defendant have had three months' continuous access to the victim" (51 Cal.3d at p. 329); in *Higgins, supra,* 9 Cal.App.4th 294, the Court of Appeal quotes the foregoing language. (*Id.* at p. 305.) However, neither *Jones* nor *Higgins* directly concerns the question of whether section 288.5 applies to interrupted periods of access to the victim and thus are not authority for the principle that it does not. (*Roberts* v. *City of Palmdale,* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496] [cases are not authority for propositions not considered therein].) *Hord, supra,* 15 Cal.App.4th 711 simply does not say what Vasquez claims, but merely describes section 288.5 as requiring "that a minimum of three proscribed acts be committed against the child victim during a time period of not less than three months." (15 Cal.App.4th at p. 720.)

 In construing a statute, we look first to the statutory language. (*People* v. *Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484].) Section 288.5, subdivision (a) provides that "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct . . . or three or more acts of lewd or lascivious conduct . . . with a child under the age of 14 years . . . is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." The words and syntax of the statute set forth the following elements: the defendant (1) must have (a) resided with, *or* (b) had recurring access to, a minor less than fourteen years of age, *and* (2) must have engaged in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the minor over a period of time not less than three months in duration. The requirement of a three-month period of time is grammatically attached to the requirement of three or more acts, not to the requirement of a shared residence or recurring access. The statutory language thus does not require that the defendant reside with, or have access to, the minor continuously for three consecutive months for a violation to be

found, but would appear to be satisfied if, for example, a child regularly spent Christmas, spring, and part of the child's summer vacations with the defendant, and the defendant sexually molested the child during the visits, as long as at least three acts of molestation could be proven. ▇ It would also appear to be satisfied by the evidence in this case, which establishes that Vasquez *continuously molested* April each time she did reside with him, and the molestations occurred over a period longer than three months, even though Vasquez did not have *continuous access* to April throughout the period.

▇ We also must construe a statute in the manner that best effects the legislative intent. (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) ▇ The intent of the Legislature in enacting section 288.5 was twofold. First, the Legislature meant to create a course-of-conduct crime, which would not be subject to the ruling of *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352] and cases following it. (Assem. Bill No. 2212 (1989-1990 Reg. Sess.) enacted by Stats. 1989, ch. 1402, § 1(a), p. 6138.) Under *Van Hoek* and its progeny, in order for a defendant to be convicted of sexual molestation under section 288, it was held that due process required the charged act to be particularly tied to a specific time, date or set of circumstances—"generic" descriptions of repeated acts would not suffice. (200 Cal.App.3d at p. 818.) The Legislature found that this rule created an unacceptable impediment to the conviction of "resident child molesters," since such offenders repeatedly victimize small children in similar ways and under similar circumstances, so that the victims cannot relate the molestations to specific times or circumstances. (Senate Floor Analysis, 3d reading of Assem. Bill No. 2212 (1989-1990 Reg. Sess.) pp. 2-3.) Secondly, it was the intent of the Legislature to impose a penalty for continuing sexual abuse of a child that would be greater than the maximum penalty for any single felony sex offense. (Assem. Bill No. 2212 (1989-1990 Reg. Sess.) enacted by Stats. 1989, ch. 1402 § 1(b), p. 6138.)

The above policies are not effectively advanced by a construction of section 288.5 which forbids prosecution for repeated victimizations of a child during noncontinuous periods in which the defendant has access to the child. A sexual predator who abuses a child every Christmas vacation for three years is certainly no less culpable than one who abuses the child three times in three successive months. ▇ Thus, the legislative intent of providing for long prison terms for persons culpable in that way and in that degree is furthered by applying the statute to the former offender as well as the latter. Indeed, it is inconceivable that the Legislature did not intend to reach the kind of conduct exemplified by Vasquez's continuous sexual exploitation of April whenever he had the chance, and of doing so over a period of two years.

■ The problems of proof which were the target of Assembly Bill No. 2212 would also be only partially addressed by a construction of the statute which would limit its application to defendants who commit repeated molestations during continuous periods of access to the child. A child who is repeatedly molested under similar circumstances during each of several separate, less-than-three-month periods of time is likely to be no better able to identify the specific date and time of any particular act than one who is victimized during a single continuous period.

Of course, where—as happens to be the case here—the defendant engaged in substantially different conduct during two separate periods when he resided with the victim, there is not a compelling evidentiary need to charge all of the molestations in both periods as a single violation of section 288.5. Indeed, since the issuance of the Supreme Court's opinion in *People* v. *Jones, supra,* 51 Cal.3d 294, there is rarely a compelling evidentiary need to charge multiple acts of child molestation under section 288.5, rather than charging each act as a violation of section 288 (lewd conduct against a minor), or other statute which proscribes individual acts. In *Jones,* the high court overruled *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811 and ruled that a conviction of sexual abuse of a minor can be legally supported by "generic" testimony by the victim, if such testimony (1) describes the kind of acts committed with sufficient specificity to assure that a crime occurred and to differentiate among the various acts of proscribed conduct, (2) describes the number of acts with sufficient certainty to support each of the counts with which the defendant is charged, and (3) describes the general time period of the acts, to assure they were committed within the statute of limitations. (*People* v. *Jones, supra,* 51 Cal.3d at p. 316.)

However, the circumstance that multiple molestations *need not* be prosecuted under section 288.5 does not mean that they *may not.* Offenses which fit both section 288.5 and another statute may be prosecuted under either, except that a particular act may not be separately charged under a statute other than section 288.5 if the act was committed during the same time period as other acts which are charged in the same proceeding under section 288.5. (§ 288.5, subd. (c); *People* v. *Hord, supra,* 15 Cal.App.4th at p. 720.)

■ No right or legitimate interest of defendants is invaded by applying section 288.5 to conduct which occurs during separate periods of recurring access to a child. A defendant's right to notice of the charges against him, his right to present a defense, and his right to a unanimous jury verdict are all affected in the same manner and degree by generic testimony, whether such testimony relates to multiple separate incidents, a truly "continuous" course of conduct, or an interrupted one. Moreover, the Supreme Court has

concluded that generic testimony by the child victim of a sexual offense does not impermissibly interfere with constitutional rights. (*People* v. *Jones*, *supra*, 51 Cal.3d at pp. 319-322.)

■ It is indeed true that a prosecutor's burden is somewhat less when prosecuting under section 288.5, rather than separately charging each of various acts committed against a minor under other applicable statutes. If several acts are separately charged, the defendant can be convicted only if the jury agrees unanimously on each act, whereas the jurors only must agree unanimously that a total of three or more acts occurred to convict under section 288.5. (§ 288.5, subd. (b).) However, we can imagine no reason why a defendant charged with multiple molestations during, for example, a child's school vacations, should be entitled to this slight evidentiary advantage, while one charged with multiple molestations in three or more consecutive months is not. As we have already observed, the culpability of the two defendants is the same. Moreover, the greater evidentiary burden for separately charged molestations is justified by a defendant's exposure to greater punishment when three or more acts are charged separately—for example, the maximum term of imprisonment for three separately charged violations of section 288, subdivision (b) is 24 years (§§ 288, subd. (b), 667.6, subds. (c), (d)) as opposed to a maximum term of 16 years for violating section 288.5.

■ In sum, the language of section 288.5 indicates the statute is violated if the defendant (1) resided with, or had recurring access to, a child under fourteen, and (2) committed three or more acts of sexual molestation of the child, and (3) three or more months passed between the first and the last act of molestation, regardless of whether the defendant resided with or had access to the child *continuously* throughout the three-or-more-month period. This interpretation of the statute is more consistent with the language of the statute and with the statute's underlying policies than an interpretation which requires three *continuous* months of access.

Here, it was charged that, while Vasquez resided with and had recurring access to April, he committed three or more acts of substantial sexual conduct (§ 1203.066, subd. (b)) and three or more lewd acts (§ 288) against her beginning on approximately July 1, 1989, and ending sometime between August and October of 1991. Substantial evidence established that Vasquez indeed resided with April in July and August of 1989 and again from June to at least August of 1991. Substantial evidence also established that Vasquez committed at least three lewd acts and at least three acts of substantial sexual conduct against April over the two years. Substantial evidence thus supported his conviction under section 288.5.

2.-6.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Vasquez's convictions of sexual battery in counts 2 and 3 are reversed. His conviction of continuous sexual abuse of a child in count 1 is affirmed.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1997.

---

*See footnote, *ante*, page 1277.