[No. F061775. Fifth Dist. Jan. 31, 2012.]

PAUL ALLEN LANE, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

COUNSEL

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Scott H. Wyckoff and Michelle K. Littlewood, Deputy Attorneys General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

FRANSON, J.—

## INTRODUCTION

This case involves interpreting a provision of the California Code of Regulations pertaining to procedures used in the breath-alcohol analysis of persons suspected of driving under the influence of alcohol in violation of Vehicle Code sections 23152 or 23153. California Code of Regulations, title 17, section 1221.4, includes required procedures for determining the accuracy of instruments used in breath-alcohol testing. These procedures include a "periodic analysis of a reference sample of known alcohol concentration" (Cal. Code Regs., tit. 17, § 1221.4, subd. (a)(2)(A)) to be conducted in a specified manner. Subdivision (a)(2)(B) of California Code of Regulations, title 17, section 1221.4, provides that "[f]or the purposes of such determinations of accuracy, 'periodic' means either a period of time not exceeding 10 days or following the testing of every 150 subjects, whichever comes sooner."

In this case respondent Paul Allen Lane (Lane) underwent a breath-alcohol analysis less than five hours after the testing instrument, known as an "Alcotest 7410," was determined to be accurate in an analysis of a "reference sample" done on January 2, 2010. Lane's breath test registered his blood-alcohol level at 0.19 percent at 12:19 a.m. and 0.20 percent at 12:24 a.m. on January 3, 2010. The Alcotest 7410 instrument used in Lane's testing had its next accuracy test on January 13, 2010, 11 days after its January 2, 2010, accuracy test. After California's Department of Motor Vehicles (the Department) determined at an administrative hearing that Lane had been driving a motor vehicle with a concentration of alcohol in his blood at or above 0.08 percent and suspended Lane's driving privilege, Lane petitioned the superior court pursuant to Vehicle Code section 13559 for judicial review of the order of suspension. The superior court ruled that because the next accuracy test on the testing instrument was performed more than 10 days after the January 2 test, the Department was not entitled to a presumption that the Alcotest 7410 testing instrument worked as intended when it was used to test Lane on January 3. The court granted Lane's petition for a writ of mandate directing the Department to reinstate Lane's driving privilege.

The Department has appealed. It contends, as it did in the superior court, that although the testing instrument may have been out of compliance with California Code of Regulations, title 17, section 1221.4, subdivision (a)(2)(B) after the 10-day period expired at the end of January 12, 2010, the testing instrument was not out of compliance with the regulation on January 3, when Lane was tested. Therefore, the Department is entitled to a presumption that blood-alcohol tests recorded on official forms were obtained by following the regulations and guidelines of title 17 of the California Code of Regulations.[1] As we shall explain, we agree with the Department and reverse the order of the superior court granting Lane's petition for writ of mandate.

Because the evidence presented at the administrative hearing, and subsequently to the superior court, is best understood with knowledge of the procedures governing the administrative hearing and the subsequent appellate review of the Department's administrative decision, we will first restate the legal principles applicable to the administrative hearing and to its subsequent appellate review. We will then summarize the evidence presented to the Department and to the court, and explain why the application of those legal

---

[1] Lane filed no brief. His failure to file a respondent's brief "means that we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant,' [(which the parties waived)] (Cal. Rules of Court, rule 8.220(a)(2), formerly rule 17(a)), examining the record and reversing only if prejudicial error is shown." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 [67 Cal.Rptr.3d 286].)

principles leads to our conclusion that the superior court erred in granting Lane's petition.

## ADMINISTRATIVE PROCEDURE AND APPELLATE REVIEW

The well-settled law applicable to this case is cogently summarized in *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227 [130 Cal.Rptr.2d 209]:

■ "We begin with a brief overview of the burdens of proof in an administrative [Department of Motor Vehicles (DMV)] hearing, which 'does not require the full panoply of the Evidence Code provisions used in criminal and civil trials.' [Citation.] In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. [Citations.] The DMV may satisfy its burden via the presumption of Evidence Code section 664. [Citation.] 'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.]' [Citation.] With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test. [Citations.]

"Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. [Citations.] 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ." [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' [Citations.]

" 'In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " ' [Citation.] Even exercising its independent judgment, the trial court still 'must afford a strong presumption of correctness

concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.' [Citation.]

"On appeal, this court ordinarily reviews the record to determine whether the trial court's findings are supported by substantial evidence. [Citation.] But where, as here, the determinative question is one of statutory or regulatory interpretation, an issue of law, we may exercise our independent judgment. [Citations.]" (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at pp. 1232–1233.)

## FACTUAL AND PROCEDURAL BACKGROUND

At the administrative hearing, the Department's evidence consisted of four documents: (1) an "AGE 21 AND OLDER OFFICER'S STATEMENT," also known as a form "DS-367," which was executed under penalty of perjury by Officer Paul D. Varner of the California Highway Patrol (CHP); (2) an arrest report prepared by Officer Varner; (3) a traffic collision report prepared by Officer Varner, which included some diagrams of the scene prepared by Officer B. Reed; and (4) a Department "driver record printout" for Mr. Lane, which showed, among other things, that he had been issued a "Class C" driver's license. These documents, along with the hearing officer's cross-examination of Officer Varner, who was called as a witness by Mr. Lane, established the following facts, which are not in dispute.

Officer Varner was dispatched to a traffic collision on Lucky Lane east of State Route 41 in Madera County. On the north shoulder of Lucky Lane, he found a Volvo station wagon with right side damage and the right front wheel off the axle. Standing beside the Volvo was Lane, who said he had been driving the Volvo. Lane also had the keys to the Volvo in his right front pocket, and the vehicle was registered to him. The officer's investigation concluded that the Volvo driven by Lane had been heading westbound on Lucky Lane, left the roadway, collided with a tree, continued in a westerly direction on the shoulder of the roadway and collided with some PVC drainage pipes. No other vehicle was struck. Varner observed Lane to have bloodshot and watery eyes, an unsteady gait and slurred speech, and Varner detected an odor of alcohol. Lane told Varner that the accident had occurred at 11:30 p.m. on January 2, 2010.

Varner arrested Lane at 12:14 a.m. on January 3, 2010, for driving under the influence. The sworn statement (DS-367) of Officer Varner stated that he administered a breath test to Lane at 12:19 a.m. and again at 12:24 a.m. on January 3, 2010, and that the results were blood-alcohol content levels of 0.19 percent and 0.20 percent, respectively.

Lane's witnesses at the administrative hearing were Officer Varner and an expert witness, former California Department of Justice Criminalist Stanley Dorrance. Lane's documentary evidence consisted of (a) two documents from a "Breath Alcohol Discovery Report" for the Alcotest 7410 testing instrument used in Lane's tests (serial No. ARRF0165)—specifically a list of the "Accuracy Checks" performed on that instrument for the time period of December 4, 2009, to February 2, 2010, and a list of the dates and times on which the instrument was actually used to test subjects during that same time period, and (b) a copy of title 17 of the California Code of Regulations. Lane did not testify.

Varner testified that the Alcotest 7410 testing instrument was tested for accuracy on December 24, 2009, January 2, 2010, January 13, 2010, and January 22, 2010, as listed in the "Accuracy Checks" document received at the administrative hearing. That document shows that the instrument tested as accurate on each of those dates. Dorrance testified that because more than 10 days elapsed between the last accuracy test (Jan. 2) before the testing of Lane (Jan. 3) and the first accuracy test after Lane's testing (Jan. 13), California Code of Regulations, title 17, section 1221.4, subdivision (a)(2) had been violated.

## THE BURDEN DID NOT SHIFT TO THE DEPARTMENT

The regulation at issue in this case is subdivision (a)(2) of California Code of Regulations, title 17, section 1221.4, which states: "(a) Procedures for breath alcohol analysis shall meet the following standards: [¶] (1) For each person tested, breath alcohol analysis shall include analysis of 2 separate breath samples which result in determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters. [¶] (2) The accuracy of instruments shall be determined. [¶] (A) Such determination of accuracy shall consist, at a minimum, of periodic analysis of a reference sample of known alcohol concentration within accuracy and precision limits of plus or minus 0.01 grams % of the true value; these limits shall be applied to alcohol concentrations from 0.10 to 0.30 grams %. The reference sample shall be provided by a forensic alcohol laboratory. [¶] 1. Such analysis shall be performed by an operator as defined in Section 1221.4 (a)(5), and the results shall be used by a forensic alcohol laboratory to determine if the instrument continues to meet the accuracy set forth in Section 1221.4 (a)(2)(A). [¶] (B) For the purposes of such determinations of accuracy, 'periodic' means either a period of time not exceeding 10 days or following the testing of every 150 subjects, whichever comes sooner."

■ Although we agree with Dorrance that the evidence showed a violation of the 10-day time requirement between the periodic tests, we note that the important point is that the violation did not occur until after January 12, 2010, i.e., until a period of time "exceeding 10 days" following the January 2 accuracy test. Lane was tested on January 3, 2010, at 12:19 a.m. and 12:24 a.m., less than 10 days after the January 2 accuracy test, and in fact less than five hours after the January 2 accuracy test, which was conducted at 8:02 p.m. on January 2.

■ "It is presumed that official duty has been regularly performed." (Evid. Code, § 664.) "The presumption in Evidence Code section 664 affects the burden of proof. (Evid. Code, § 660.) Thus, section 664 effectively places upon the licensee against whom a 367 report is offered the burden of proof as to the nonexistence of the foundational trustworthiness of the report as a whole, and in particular, the nonexistence of the foundational reliability of tests upon which the report is . . . based." (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 143 [7 Cal.Rptr.2d 818].) "If the licensee shows, through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed, the burden shifts to the Department to prove that the test was reliable despite the violation." (*Id.* at p. 144; accord, see also *Robertson v. Zolin* (1996) 44 Cal.App.4th 147, 151 [51 Cal.Rptr.2d 420] (*Robertson*).) Officer Varner's sworn statement on the DS-367 was executed on January 3, 2010. In it he stated: "I certify under penalty of perjury under the laws of the State of California, that the above breath test sample results were obtained in the regular course of my duties. I further certify that I am qualified to operate this equipment and that the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations [on that date]." Nothing in the evidence presented by Lane refutes this sworn statement. The evidence does not show any lack of compliance with title 17 when Lane was tested on January 3, and thus Lane never succeeded in shifting the burden to the Department to prove that the testing of Lane was reliable.

At the administrative hearing and in the superior court, Lane relied on *Robertson, supra,* 44 Cal.App.4th 147, a case which we find to be easily distinguishable. In *Robertson*, the subject's first test showed his blood-alcohol content to be 0.18 percent. "However, the second test, given a minute later, registered '.XX.' " (*Id.* at p. 150.) A third test, given only two minutes after the second test, produced another reading of 0.18 percent. The driver produced evidence that an ".XX" test result meant that the test was not valid and indicated the presence of mouth alcohol. The superior court granted the driver's petition to revoke the Department's suspension of his driver's license. The appellate court agreed. "The very form on which Officer

Gunderson recorded the test results indicates the presence of mouth alcohol requires the officer to stop the test and recommence a 15-minute observation of the driver. (See generally, Cal. Code Regs. tit. 17, § 1219.3.) Yet, Gunderson obtained a third sample from Robertson immediately after the second one activated the mouth-alcohol flag." (*Id.* at p. 152.) Thus, in *Robertson* there was "sufficient evidence," and in fact uncontradicted evidence, "to support the trial court's finding official testing standards were not observed" (*id.* at p. 153), and to shift the burden to the Department to demonstrate the reliability of the 0.18 percent test results. "As the [Department] offered no evidence indicating the test results were reliable despite this deviation, the trial court properly granted Robertson's petition for a writ of mandate." (*Ibid.*)

In *Robertson* there was evidence directly contradicting the officer's sworn statement that "the test was administered pursuant to the applicable regulations . . . ." (*Robertson, supra*, 44 Cal.App.4th at p. 151.) In the case before us, Lane presented no evidence to contradict the January 3 affidavit of Officer Varner, and thus the burden never shifted back to the Department to present further evidence demonstrating the reliability of Lane's test results.

We also observe that the purpose of subdivision (a)(2)(B) of title 17, section 1221.4 of the California Code of Regulations appears to be to ensure that no subject is tested with a testing instrument that has not undergone an accuracy test more than 10 days preceding the subject's test (or with a testing instrument that has tested more than 150 subjects since the instrument's previous accuracy test, if 10 days has not yet elapsed since that previous accuracy test). Nothing in the regulation expressly provides that the testing of a subject, done in compliance with title 17 at the time the subject is tested, is to retroactively be considered invalid or untrustworthy if the testing instrument should fall out of compliance with California Code of Regulations, title 17, section 1221.4 at some later point in time. We think the superior court erred in so construing the regulation. Such a construction would, for example, appear to create an unwarranted loss of the presumption of reliability in instances in which a testing instrument is lost, stolen or destroyed after a subject has been tested, but before the next timely periodic accuracy test can be conducted. We also note that Lane might have succeeded in overcoming the presumption of reliability, even without any shifting of burdens, if he had been able to show that the next accuracy test conducted after the testing of Lane showed the instrument to be unreliable. But no evidence of any failure of any accuracy test of the instrument, at any time, was ever presented. In fact the next test, which was conducted on January 13, deemed the Alcotest 7410 as accurate.

## DISPOSITION

The order of the superior court granting respondent's petition for a writ of mandate is reversed.

Levy, Acting P. J., and Kane, J., concurred.