Filed 12/8/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S209975 |
| v. | ) | |
| | ) | Ct.App. 4/1 D057655 |
| FLOYD LAVENDER, | ) | |
| | ) | Imperial County |
| Defendants and Appellant. | ) | Super. Ct. No. JCF21567 |
| _____ | ) | |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | Ct.App. 4/1 D057686 |
| Plaintiff and Respondent, | ) | |
| | ) | Imperial County |
| v. | ) | Super. Ct. No. JCF21566 |
| | ) | |
| MICHAEL JAMES GAINES, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| _____ | ) | |

Jurors, like all human beings, are imperfect. It follows that jury deliberations may also be imperfect. A single juror may fail to recollect some bit of testimony. Some jurors may forget or misapply one of the instructions. Others may focus tenaciously but unreasonably on one aspect of the record to the exclusion of the rest. Through the give and take of deliberations, however, the jury's collective memory and common sense will often correct these types of errors and lead to a result that surpasses in wisdom the understanding of any one person.

1

In this case, the parties agree that the deliberations were imperfect. Evidence submitted in support of defendants' motion for new trial revealed that one or more members of the jury "discussed the fact that if the [defendants] were innocent then they should've testified." Evidence submitted in opposition to the motion indicated that the foreperson "immediately admonished that juror that [they] could not consider that issue" and "there was no further mention" of it. The Court of Appeal found—and the parties do not dispute—that the discussion of defendants' decisions not to testify constituted misconduct that raised a presumption of prejudice. The Court of Appeal also found—and the parties do not dispute—that the trial court failed to recognize and resolve a conflict in the evidence as to whether the foreperson did in fact remind the jury of the court's instructions to disregard defendants' decisions not to testify. But the Court of Appeal deemed it unnecessary to remand the matter to the trial court to resolve that evidentiary conflict. The appellate court instead reasoned that the misconduct was prejudicial—even assuming the foreperson had promptly and correctly reminded the jury of the court's instructions—because the jury's discussion involved "an *inference of guilt* based on [defendants'] failure to testify." The Court of Appeal therefore reversed the convictions and ordered a new trial.

Reviewing the issue of prejudice from juror misconduct independently, as is our duty, we find that the Court of Appeal erred in declaring the misconduct in discussing defendants' decisions not to testify to be categorically prejudicial without considering whether the jury was promptly reminded of the court's instructions to disregard defendants' decisions not to testify or whether any objective evidence in the record indicated that the reminder of the court's instructions would have been ineffective. We therefore reverse the Court of Appeal and remand the matter to the trial court to determine in the first instance the nature and scope of the misconduct, the existence and timing of any reminder

2

of the court's instructions to disregard defendants' decisions not to testify, as well as any other material disputed facts, and to reconsider the motion for new trial.

## BACKGROUND

Defendants Floyd Lavender and his cousin Michael James Gaines were convicted of the kidnapping (Pen. Code,[1] § 207, subd. (a)) and first degree murder (§ 187, subd. (a)) of Courtney Bowser, and the torture (§ 206) of Bowser and two other victims, Kristen Martin and Michael Hughes. Defendants were each sentenced to a term of 25 years to life for the murder, plus a consecutive five-year term for kidnapping, as well as three concurrent life terms for torture, consecutive to the indeterminate term for the murder.

The prosecution alleged that on the night of August 14, or in the early morning hours of August 15, 2003, defendants tortured and terrorized the victims (a group of methamphetamine users, two of whom had recently been released from juvenile hall) and threatened to shoot them over a period of hours in an effort to discover who had stolen two blank or not fully printed traveler's checks that Gaines had entrusted to Angela Vereen, his upstairs neighbor in Palm Desert. As Gaines was about to resume his investigation into the checks' disappearance by pounding the flat ends of nails into Hughes's head with a hammer or chisel, Bowser blurted out that she had taken the checks and had traded them for "dope." After beating and torturing Bowser—and telling her she was going to die—defendants handcuffed her and led her out of Vereen's apartment. The next morning, Vereen asked Gaines whether he and Lavender had recovered the missing traveler's checks. Gaines said "no," but added that "[t]he girl is in a canal with a bag over her head barely breathing."

---

[1] All further unspecified references are to the Penal Code.

3

Five days later, Bowser's lifeless body was discovered in an irrigation ditch leading to the Pansy Canal in Imperial County. Her body was not identified until February 2006.

The defense argued that Bowser had died from a drug overdose after a multiday methamphetamine binge with the prosecution's percipient witnesses, that these witnesses had panicked and disposed of Bowser's body in the ditch, and that these witnesses concocted a story to scapegoat defendants in the event the police ever became involved. No forensic evidence linked defendants to Bowser's death.

The forensic pathologist who performed the autopsy opined that Bowser had been alive when placed in the water and had died of drowning following a struggle. He excluded drug overdose, including an overdose of gamma-hydroxybutyric acid (GHB, a date rape drug), as the cause of death. However, a defense expert who examined the various reports testified that Bowser would have been dead at the time she was placed in the water and that he would not rule out an overdose as the cause of death, noting the elevated level of GHB in her vitreous fluids. The experts also disagreed as to how long Bowser's body had been in the ditch.

**The Motion for New Trial**

Gaines filed a motion for new trial, which Lavender joined, alleging that the prosecutor improperly commented in argument, and the jurors improperly discussed and considered during their deliberations, defendants' decisions not to testify. The defense motion was supported by declarations from three jurors. Juror No. 4 stated that "the fact that the defendants did not testify was discussed at length during the deliberations and also played a large part in our decision. We discussed the fact that if the [defendants] were innocent then they should've testified." Juror No. 9 stated that "[s]everal jurors also discussed the fact that the

4

Defendants did not testify in this case." Juror No. 10 stated that "[t]here was no testimony from the defendants and we discussed this fact during the deliberations and openly talked about why they did not testify and that this fact made them appear guilty to us. [¶] There was not enough testimony from defendants' witnesses. The jurors discussed that the defendants should have provided more witnesses, including themselves, to testify on their behalf."

In opposition, the prosecution submitted a declaration from the foreperson as well as new declarations from Juror No. 4 and Juror No. 9. The foreperson stated that "[t]he only discussion that occurred during deliberations regarding the defendants not testifying is when one of the jurors mentioned it. I immediately admonished that juror that we could not consider that issue. I specifically recall that Juror No. 11 . . . also stated that we were not to consider that issue and must follow the instructions." Juror No. 4 stated that "[t]he only discussion that occurred during deliberations regarding the defendants not testifying is when a juror mentioned it. The foreperson immediately told the juror that we could not consider that issue . . . ." Juror No. 9 stated that "[t]he only discussion that occurred during deliberations regarding the defendants not testifying is when one of the jurors mentioned it. The foreperson immediately admonished that juror that we could not consider that issue. Several other jurors then also repeated that it was an issue that we could not consider."

In reply, defendants offered the declaration of the defense investigator, who asserted that the declaration of Juror No. 4 submitted by the prosecution was "not what he told me on several occasions during my interviews with him. He told me that the defendants not testifying was discussed for some period of time and was more than a mere mentioning of that fact. He also told me that the jury discussed that if they were really innocent they would have testified. He never said that [the foreperson] or any other juror admonished them to stop talking about that or that

5

they could not consider this in their deliberations." The defense investigator similarly asserted that the declaration of Juror No. 9 submitted by the prosecution "is not what she told me when I first interviewed her. She told me that several jurors discussed the fact that the defendants did not testify. She did say that at some later point in time that a juror said that they should not discuss that. She never told me that the foreperson immediately put a stop to the discussion."

The trial court admitted only limited portions of the declarations. Except as to the allegation that several jurors discussed at length defendants' failure to testify, the trial court excluded the declarations proffered by the defense from Juror No. 4, Juror No. 9, and Juror No. 10 as the "subjective thought processes and mental processes of the jurors." The trial court also excluded the declaration of the defense investigator in its entirety as "inadmissible hearsay, irrelevant, insufficient to impeach verdicts and a violation of Evidence Code section [1150]." From this limited record, the trial court determined "that jury misconduct did occur," in that at least one juror "mentioned that the defendants did not testify during the deliberation process," but the court found that the presumption of prejudice had been rebutted when "the admonition by the foreperson as stated to the jury cured the misconduct." Thus, "no actual prejudice occurred."

The court additionally found that "there does not appear to be before the Court clearly defined and specific disputes on material issues relating to misconduct" and therefore concluded the defense had "failed to make a sufficient showing that a . . . hearing should be held to elicit testimony from jurors."

The Court of Appeal reversed. The appellate court found the trial court erred when it excluded, and therefore failed to weigh, certain evidence relevant to the nature and scope of the misconduct. In particular, the Court of Appeal found admissible the statement from the initial declaration of Juror No. 4 that "[w]e discussed the fact that if the [defendants] were innocent then they should've

6

testified" (as clearly representing " 'statements that are objectively ascertainable by sight, hearing, or the other senses' " (quoting *People v. Cissna* (2010) 182 Cal.App.4th 1105, 1116)) and the statement that those discussions "played a large part in our decisions" (as "capable of an interpretation that described the *quantitative* level at which the failure to testify was involved in the jury's discussions"). The Court of Appeal also admitted the statements from the initial declaration of Juror No. 10 that the jury "openly talked about why they did not testify and that this fact made them appear guilty to us" and that "[t]he jurors discussed that the defendants should have provided more witnesses, including themselves, to testify on their behalf" (as clearly representing statements that were objectively ascertainable by the senses). Finally, the Court of Appeal admitted the portions of the defense investigator's declaration relating to prior inconsistent statements by Juror No. 4 and Juror No. 9 as impeachment and "to the extent that the declarations submitted by the prosecution made Juror Nos. 4 and 9 'witness[es] . . . at the hearing' on the issue of jury misconduct within the meaning of Evidence Code section 1235, their prior inconsistent statements would also be admissible under Evidence Code section 1201 for the truth of the statements contained in the declarations."

The Court of Appeal then reasoned that even accepting the truth of the foreperson's assertion that there was only a single comment about the defendants' decisions not to testify and then an immediate reminder of the court's instructions that this fact was not to be considered, the presumption of prejudice was not rebutted in this case. The Court of Appeal court found the foreperson's reminder insufficient to demonstrate that prejudice did not exist because the jury's discussion "was expressly linked to the adverse inference of guilt to be drawn from the failure to testify. . . . [W]hen a jury chooses to place that inference on the table *notwithstanding the court's express prior instruction* not to consider the

7

same inference, we have difficulty understanding why the foreman's *repetition* of that instruction would have any curative effect on a jury that has already evinced a willingness to disregard the court's instructions." The court then found a reasonable probability defendants were actually harmed by the misconduct in this case, which "turned entirely on close and substantial credibility assessments,"

We granted review and directed the Court of Appeal to vacate its decision and "reconsider the cause in light of *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1462-1471, *People v. Von Villas* (1992) 11 Cal.App.4th 175, 251-261, and *People v. Perez* (1992) 4 Cal.App.4th 893, 905-909," each of which had remanded for an evidentiary hearing on a claim of jury misconduct. On remand, the Court of Appeal modified its opinion and again reversed. After finding the cited cases were "distinguishable" and based on "questionable legal reasoning," a majority of the Court of Appeal "remain[ed] convinced the misconduct by this jury in discussing the adverse inference to be drawn from defendants' failure to testify was presumptively prejudicial and, because the evidentiary basis for the guilty verdict appeared diaphanous and was in many respects in disarray, the record in this case is inadequate to rebut that presumption." Justice Nares would have remanded the matter to enable the trial court to reconsider the motion.

We again granted review.

### DISCUSSION

The procedural history of defendants' jury misconduct claim is complex. The trial court and the Court of Appeal each relied on different evidence and each came to different legal conclusions. Each party, in turn, has abandoned its initial strategy and adopted the strategy of the other side. The People, for example, pleaded in the trial court and in the Court of Appeal that no evidentiary hearing was needed, but argue in this court that "[g]iven the unresolved material, disputed issues of fact in this case, a remand for an evidentiary hearing . . . is the

8

appropriate remedy." Defendants, on the other hand, pleaded for an evidentiary hearing in the trial court and in the Court of Appeal, but argue in this court that "no further trial court proceedings are necessary to resolve the juror misconduct claim presented here." To untangle this web, we begin with the claim of misconduct itself.

The jury was instructed not to "consider, for any reason at all, the fact that the defendant[s] did not testify" and not to "discuss that fact during your deliberations or let it influence your decision in any way." The trial court found—and the People do not dispute—that one or more jurors during deliberations nonetheless mentioned defendants' decisions not to testify. The violation of the court's instructions constituted misconduct. (*People v. Loker* (2008) 44 Cal.4th 691, 749 (*Loker*); *People v. Leonard* (2007) 40 Cal.4th 1370, 1425.) Such misconduct, in turn, gave rise to a presumption of prejudice, which may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm resulting from the misconduct. (*People v. Williams* (2006) 40 Cal.4th 287, 333; *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417.)

The trial court determined, as a factual matter, that the foreperson had reminded the jury of the court's instructions not to consider defendants' decisions not to testify and concluded therefore "that no actual prejudice occurred" and denied the motion for new trial. On appeal, defendants argued that because there was a conflict in the evidence as to whether the foreperson had so admonished the jury, the trial court abused its discretion in failing to conduct an evidentiary hearing. The Court of Appeal disagreed in part, reasoning that the conflict as to whether the jury had been reminded to disregard defendants' decisions not to testify was not a valid basis for an evidentiary hearing under the peculiar

9

circumstances of this case. "Even assuming the foreman's declaration was credited," the Court of Appeal reasoned, the People had failed to rebut the presumption of prejudice because "the discussion about defendants' failure to testify was not limited to expressions of regret or curiosity, but instead was expressly linked to the adverse inference of guilt to be drawn from the failure to testify." The Court of Appeal thus reversed the judgment and remanded the matter for a new trial.

Reviewing independently the question whether prejudice from juror misconduct has been rebutted (*People v. Leonard*, *supra*, 40 Cal.4th at p. 1425), we conclude the Court of Appeal erred. Our case law indicates that a reminder to the jury of the court's instructions to disregard a defendant's decision not to testify is, in the absence of objective evidence establishing a basis to question the effectiveness of the reminder (see Evid. Code, § 1150), strong evidence that prejudice does not exist.

In *Loker*, *supra*, 44 Cal.4th at pages 748-749, for example, we upheld the trial court's ruling that the presumption of prejudice had been rebutted where the foreperson responded to "discussions" about the defendant's decision not to testify by reminding the jury " 'that he had a legal right not to testify' " and " 'that it should not be considered one way or the other.' " The foreperson's admonition " 'was the end' " of the conversation on that topic. (*Id*. at p. 748; see *id*. at pp. 750 [no prejudice where jury's discussion of the costs of punishment "was met with an admonition from the foreperson"], 751 [possibility of prejudice from jury's discussion of psychiatric report that was not admitted into evidence "was mitigated by the foreperson's reminder"].) In *People v. Avila* (2009) 46 Cal.4th 680, we again agreed that it was misconduct for the jurors to discuss the defendant's decision not to testify but upheld the trial court's ruling that the presumption of prejudice had been rebutted where "the offending juror was

10

immediately reminded he could not consider this factor and the discussion ceased." (*Id.* at p. 727; cf. *People v. Brasure* (2008) 42 Cal.4th 1037, 1060 [error in prosecutor's argument concerning defendant's decision not to testify was harmless where the court promptly instructed the jury " 'neither [to] discuss this matter nor permit it to enter into your deliberations' "].)

Similarly, the Court of Appeal in *People v. Hord* (1993) 15 Cal.App.4th 711 (*Hord*) recognized that misconduct occurred when " 'several jurors discussed why the defendant did not take the stand and testify' " but concluded that the presumption of prejudice had been rebutted when the foreperson reminded the jury " 'that whether the defendant testified or not had no bearing on his guilt or innocence' " and " 'was not to be used in our decision making process. Any further discussion or talk whatsoever regarding testimony of the defendant was stopped.' " (*Id.* at pp. 721-722.) After all, whether the presumption of prejudice from jury misconduct has been rebutted is not only an objective inquiry, it "is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' (*Rushen v. Spain* (1983) 464 U.S. 114, 119) and of society's strong competing interest in the stability of criminal verdicts (*id.* at pp. 118-119); [*In re*] *Carpenter* [(1995)] 9 Cal.4th 634, 655)." (*In re Hamilton* (1999) 20 Cal.4th 273, 296.)

Other courts are in accord. In *Race v. Pung* (8th Cir. 1990) 907 F.2d 83, 11 of the 12 jurors testified that the deliberations included a discussion of the habeas corpus petitioner's decision not to testify. (*Id.* at p. 85.) Because "the foreman or others admonished the speaker that issue could not be considered," the trial court determined "there were no grounds to believe that [the petitioner]'s failure to testify affected the jury's deliberations," and the Eighth Circuit found "no grounds on which to overrule the state court's decision." (*Ibid.*) In *Perez v. Marshall* (S.D.Cal. 1996) 946 F.Supp. 1521, the presumption of prejudice arising from the five- to 10-minute discussion of the habeas corpus petitioner's decision not to

11

testify was rebutted "when the foreman explained to the jury that they could not discuss or consider the defendant's failure to testify" and "the subject was not mentioned again." (*Id*. at p. 1538; see *Shumate v. Newland* (N.D.Cal. 1999) 75 F.Supp.2d 1076, 1095-1096; *Broussard v. State* (Tex.Crim.App. 1974) 505 S.W.2d 282, 284-285 [comment in deliberations that the defendant did not testify " 'because he had been in trouble with the law before' " was not prejudicial where the foreperson instructed the jury not to consider it].)

Defendants, like the Court of Appeal, contend that the presumption could not have been rebutted in this case, even assuming that the foreperson reminded the jury of the court's instructions concerning defendants' decisions not to testify. They find it fatal that the jury discussed not only that defendants did not testify, but also "the adverse inferences to be drawn from this fact." In drawing a hard line between misconduct arising from discussion of a defendant's decision not to testify and misconduct arising from discussion of an inference of guilt from a defendant's decision not to testify, they rely especially on the following passage from *Hord*, *supra*, 15 Cal.App.4th at page 728: "When comments go beyond natural curiosity and their content suggests inferences from forbidden areas, the chance of prejudice increases. For example, if a juror were to say, 'The defendant didn't testify so he is guilty,' or 'we will have to find the defendant guilty of the greatest charges to ensure he will be adequately punished,' the comments go beyond mere curiosity and lean more toward a juror's drawing inappropriate inferences from areas which are off limits. Such comments are more likely to influence that juror and other jurors."

Defendants misread *Hord*. The likelihood that comments drawing inappropriate inferences from a defendant's decision not to testify pose an increased "chance of prejudice" (*Hord*, *supra*, 15 Cal.App.4th at p. 728) as compared to comments merely expressing curiosity about a defendant's decision

12

does not mean that an explicit reminder to the jury that this is a forbidden topic would necessarily be ineffective at dispelling the presumption of prejudice. Indeed, *Hord* itself found the presumption of prejudice rebutted, despite a juror's comment about the defendant's decision not to testify that "may have carried a greater potential for prejudice than a mere statement of curiosity" (*ibid*.), precisely because the foreperson reminded the jury the topic was irrelevant and " 'had no bearing on [the defendant's] guilt or innocence.' " (*Id*. at p. 722.) *Hord* also found the presumption of prejudice rebutted, despite the absence of an admonition, where the jury's discussion of potential punishment was no more than "[t]ransitory comments of wonderment and curiosity [which], although misconduct, are normally innocuous, particularly when a comment stands alone without any further discussion." (*Id*. at pp. 727-728; see *People v. Leonard*, *supra*, 40 Cal.4th at p. 1425 [finding the presumption of prejudice rebutted where the jury discussed the defendant's decision not to testify, despite the absence of a contemporaneous admonition]; cf. *Hovey v. Ayers* (9th Cir. 2006) 458 F.3d 892, 912-913 [prosecutor's brief comments about defendant's decision not to testify were harmless even in the absence of a curative instruction].) Thus, neither part of *Hord* suggests that a finding of unrebuttable prejudice is mandated here.

It may often be the case, though, that juror comments that go beyond mere wonderment and curiosity may need stronger affirmative evidence—such as a reminder of the court's instructions not to consider the forbidden topic—to show that prejudice does not exist. As we said in *Loker,* "Even if some comments disclosed in the amended declarations might have given rise to inferences adverse to defendant, the foreperson promptly forestalled that possibility, reminding the jurors that defendant had a right not to testify and that his assertion of that right could not be held against him. Under these circumstances, the purpose of the rule against commenting on defendant's failure to testify was served, and the

presumption of prejudice is rebutted." (*Loker*, *supra*, 44 Cal.4th at p. 749.) Similarly, if (as the Court of Appeal assumed) the foreperson reminded the jury in this case that the decision not to testify could not be held against defendants, then (in the absence of objective evidence to the contrary) that reminder would constitute strong evidence to rebut the presumption of prejudice. (Cf. *Leonard*, *supra*, 40 Cal.4th at p. 1426 [prejudice from jury's discussion as to the greater cost of imprisonment compared to execution was rebutted by foreperson's reminder that " 'this was not an appropriate consideration' in determining whether to impose the death penalty"].)

The specific factual scenario on which the Court of Appeal rested its decision below is thus distinguishable from that in *People v. Cissna*, *supra*, 182 Cal.App.4th 1105, on which the Court of Appeal heavily relied. In *Cissna*, a juror met with and discussed the case with a friend during the trial on a twice-daily basis, beginning with the first day of testimony. (*Id.* at p. 1114.) "[T]hese daily, deliberative-type discussions improperly interjected the views of a nonjuror—who had not been vetted through voir dire, had not been sworn to follow the law, and had not heard all the evidence—into [the juror]'s consideration of the case" (*id.* at p. 1120) and included the nonjuror's observation that " 'guilty people do not testify, and if the defendant was not guilty he would testify.' " (*Id.* at pp. 1114-1115.) The Court of Appeal concluded that in "the circumstances of this case," where the issue of the victim's credibility was of critical importance, "the discussion of defendant's decision not to testify carried a high potential of prejudice to the defense" (*id.* at p. 1121) and, along with other matters the nonjuror encouraged the juror to consider "that were improper and detrimental to the defense," warranted a new trial, despite the court's general instructions to the jury not to discuss the case with other people and not to consider the improper matters. (*Id.* at p. 1122.) Here, unlike in *Cissna*, there were no secret

14

deliberations "*every single day*" with a nonjuror that "carried a high potential of detriment to the defense," nor (at least as assumed by the Court of Appeal) were there any deliberation errors that went uncorrected by the other jurors. (*Id.* at pp. 1122-1123; cf. *People v. Nesler* (1997) 16 Cal.4th 561, 579, 583 (lead opn. of George, C. J.) [substantial likelihood of juror bias where the juror "referred repeatedly to the out-of-court information she had obtained" even after she "was reminded repeatedly by other jurors not to do so"].)

Defendants, like the Court of Appeal, assert that the foreperson's reminder of the court's instructions to disregard defendants' decisions not to testify could not have been sufficient to rebut the presumption of prejudice for *this* jury, which chose "to place that inference on the table *notwithstanding the court's express prior instruction* not to consider the same inference." But the limited factual scenario contemplated by the Court of Appeal offered no objective indication that one or more jurors was unable or unwilling to follow the court's instructions once reminded of them. (Cf. *People v. Cissna*, *supra*, 182 Cal.App.4th at pp. 1118-1119 [juror's "failure to comply with repeated admonitions not to discuss the case," which were described as "an absolute obligation" and "a critical component of a fair trial," "casts serious doubts on his willingness to follow the court's other instructions"].) When we talk about jury deliberations, we are talking about the conduct of human beings who are fallible. "It's a rare jury trial in which there are no mistakes on anyone's part." (*United States v. Farmer* (7th Cir. 2013) 717 F.3d 559, 564.) "To demand theoretical perfection from every juror during the course of a trial is unrealistic." (*In re Carpenter* (1995) 9 Cal.4th 634, 655.) Accordingly, to assume that jurors who wade into a forbidden topic in the course of deliberations can never be put right again by a reminder from the trial judge or from fellow jurors sets an unreasonably high bar for jury conduct. "As MR. JUSTICE POWELL has observed, the 'collective judgment' of the jury 'tends to

15

compensate for individual shortcomings . . . .' " (*Herring v. New York* (1975) 422 U.S. 853, 863, quoting Powell, *Jury Trial of Crimes* (1966) 23 Wash. & Lee L. Rev. 1, 4.)  Where (as in the cases cited above) a mistake by one or more jurors during deliberations is promptly followed by a reminder from a fellow juror to disregard a defendant's decision not to take the stand—and the discussion of the forbidden topic thereafter ceases, without any objective evidence that the reminder of the court's instructions was ineffective—the reminder tends strongly to rebut the presumption that "[t]he defendant's failure to testify may still have affected the decision of at least one of the jurors."  The Court of Appeal therefore erred in finding the presumption of prejudice could not be rebutted even if the foreperson had reminded the jury of the court's instructions not to consider that issue and no objective evidence indicated the reminder would have been ineffective.

However, as defendants argued in the Court of Appeal and as the People concede here, there has not yet been a full and fair determination that the foreperson actually reminded the jury of the court's instructions.  The trial court's finding that the foreperson offered such an admonition was based only on the juror declarations offered by the People and did not take account of the declaration of the defense investigator that none of those jurors ever mentioned any admonition during their interviews with him.  The trial court had deemed the defense investigator's declaration to be inadmissible hearsay, but the Court of Appeal found—and, because the People do not dispute it here, we will accept for purposes of this appeal—that the investigator's declaration recounting the jurors' failure to mention any admonition during their interviews with him qualified as prior inconsistent statements of those jurors. (See Evid. Code, §§ 1202, 1235.)  The Court of Appeal's ruling thus created an unresolved conflict in the evidence as to whether the jury was appropriately admonished, a conflict the trial court has not yet had the opportunity to resolve.

16

Similarly, the trial court has not yet resolved the material, disputed issues of fact surrounding the nature and scope of the discussion of defendants' decisions not to testify. The declarations from the People assert that defendants' choices were merely "mentioned" by one juror and that the discussion on that topic was very brief. The declarations from defendants, on the other hand, assert that the discussion involved more than one juror and was "more than a mere mentioning of that fact." In addition, the defense declarations, unlike the People's declarations, explicitly linked the jury's discussion of defendants' decisions not to testify to the jury's discussion of their guilt.

And the trial court has not yet addressed whether any objective circumstances indicated that a reminder of the court's instructions to disregard defendants' decisions not to testify would have been ineffective in quashing the jury's consideration of the topic. For example, a persistent refusal to follow the court's instructions would tend to confirm the prejudicial effect of the misconduct claimed by defendants. (*Krouse v. Graham* (1977) 19 Cal.3d 59, 81; see *People v. Perez* (1992) 4 Cal.App.4th 893, 908-909.) We intimate no view as to whether the record supports a finding of a persistent refusal to obey the court's instructions— as the People put it, the evidence on that point is "inconclusive"—but merely point out that this is an additional aspect for the trial court to address when it reconsiders the motion for new trial based on jury misconduct. (*Krouse*, *supra*, 19 Cal.3d at pp. 81-82.)[2]

---

[2]    Our discussion is necessarily limited to juror comments about a defendant's decision not to testify, a topic that does "not involve extra record material" and that concerns a matter "already obvious to the jurors." (*Hord*, *supra*, 15 Cal.App.4th at p. 728; accord, *Raley v. Ylst* (9th Cir. 2006) 470 F.3d 792, 803 ["Although the jury's discussion of this issue clearly violated the trial court's instructions, what happened (or did not happen) in the courtroom was a part of trial, not extrinsic to it."].) We are not presented with, and therefore do not

*(footnote continued on next page)*

17

Because "[t]he power to judge the credibility of witnesses and to resolve conflicts in the testimony is vested in the trial court . . ." (*In re Carpenter*, *supra*, 9 Cal.4th at p. 646), the proper remedy is to remand the matter to the trial court to resolve the factual disputes underlying the issue of prejudice. (See *Green v. Superior Court* (1985) 40 Cal.3d 126, 134 [remanding for reconsideration where "an erroneous ruling by the trial court had thwarted development of a full record on the point . . ."].) Whether that will require an evidentiary hearing is a matter entrusted to the discretion of the trial court. (*People v. Hedgecock* (1990) 51 Cal.3d 395, 415.) As we have previously explained, "such a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact." (*Ibid.*; see *People v. Loker*, *supra*, 44 Cal.4th at p. 749.)

Finally, we address defendants' contention that the People should be estopped from requesting an evidentiary hearing or, alternatively, that the People have forfeited their request for one. It is true that, in the trial court, the People argued successfully that no evidentiary hearing was necessary. But that argument rested on their contention, also embraced by the trial court, that large portions of the defense declarations (including the entire declaration of the defense investigator) were inadmissible and that the fact of the foreperson's reminder to disregard defendants' decisions not to testify (as well as the nature and scope of the misconduct) was therefore uncontested. Now that the factual record has been expanded by the Court of Appeal, there is no unfairness in allowing the People to

*(footnote continued from previous page)*

discuss, the proper analysis of a jury's improper receipt of information from "extraneous sources." (*People v. Nesler*, *supra*, 16 Cal.4th at p. 578 (lead opn. of George, C. J.); *In re Carpenter*, *supra*, 9 Cal.4th at p. 653.)

18

adjust their argument to address that expanded factual record or in permitting the trial court to resolve the factual conflicts in the first instance. (*People v. Moore* (2006) 39 Cal.4th 168, 177; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 987; cf. *People v. Duran* (1996) 50 Cal.App.4th 103, 114 ["there was no material conflict in the evidence presented in support of the motion for new trial and thus, no need for an evidentiary hearing"].) After all, defendants find themselves in exactly the same predicament. They have argued in this court, quite strenuously, that no evidentiary hearing should be permitted—on the assumption, which we have now rejected, that they were entitled to relief even viewing the record in the light most favorable to the People. Whether an evidentiary hearing is required, therefore, remains within the discretion of the trial court on remand. (*People v. Hedgecock*, *supra*, 51 Cal.3d at p. 420.) Neither forfeiture nor estoppel bars the trial court from resolving defendants' motion for new trial on its merits.

## DISPOSITION

We reverse the judgment of the Court of Appeal and direct that court to vacate the order denying defendants' motion for new trial and remand the matter to the trial court for further proceedings consistent with our opinion.

BAXTER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
DONDERO, J.*

* Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Lavender

_____

**Unpublished Opinion**  XXX NP opn. filed 3/6/13 – 4th Dist., Div. 1
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S209975
**Date Filed:** December 8, 2014

_____

**Court:** Superior
**County:** Imperial
**Judge:** Donal B. Donnelly

_____

**Counsel:**

Kimberly J. Grove, under appointment by the Supreme Court, for Defendant and Appellant Floyd Lavender.

Rebecca P. Jones, under appointment by the Supreme Court, for Defendant and Appellant Michael James Gaines.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, Gil Gonzalez, Steven T. Oetting and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rebecca P. Jones
3549 Camino del Rio South, Suite D
San Diego, CA  92108
(619) 269-7872

Eric A. Swenson
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2216

2