Filed 6/30/16  P. v. Gayles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B262637 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA104590) |
| v. | |
| DAVID LAMONT GAYLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mike Camacho, Judge.  Affirmed.

Carlos Ramirez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted David Lamont Gayles (defendant) of attempted voluntary manslaughter and assault with a firearm, and the trial court sentenced him to 26 years in state prison. On appeal, defendant argues that the court abused its discretion in denying his motion for a mistrial due to juror misconduct occurring during voir dire. We conclude there was no abuse of discretion, and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     Facts**

On the day he was released from prison for robbery, defendant, who is a gang member, twice shot an "affiliate" of a rival gang in a park located between the two gangs' territories. The gunshots put the victim in the hospital for three months. Defendant told police that he shot the victim in self-defense because the victim was reaching for a gun in his waistband.

**II.     Procedural Background**

*A.     Charges*

The People charged defendant with (1) attempted murder (Pen. Code §§ 187, subd. (a) & 664),[1] and (2) assault with a deadly weapon (§ 245, subd. (a)(2)). As to the attempted murder count, the People alleged that defendant intentionally discharged a firearm causing great bodily injury. (§ 12022.53, subds. (d) & (e)(1).) As to the assault with a deadly weapon, the People alleged that defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). The People also alleged that both crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The People further alleged that defendant's 2009 robbery conviction constituted a "strike" under California's Three Strikes law (§§ 667, subds. (b)-(j) & 1170.12, subds. (a)-(d)), was a prior "serious" or "violent" felony (§ 667, subds. (a)(1) & (d)), and had resulted in a prior prison term (§ 667.5, subd. (b)).

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

### B.    *Voir dire*

At the beginning of voir dire, the court instructed the jurors not to "talk about this case" or "what's going on in this courtroom."

During voir dire, Prospective Juror No. 15 mentioned while being questioned in camera that defendant gave her an "evil look [that] really scared [her]." She mentioned that two other prospective jurors had told her they had the same concern. Because that juror indicated she could not set aside her feelings, the court excused her. Minutes later, the court questioned Prospective Juror No. 7 in camera, and that juror indicated that Prospective Juror Nos. 3 and 5 mentioned that defendant was staring or "mad dog[ging]" her, but that she had not witnessed it herself and could still be "objective."

At sidebar, defendant moved for a mistrial because the jurors were ignoring the trial court's admonition and discussing extraneous information (that is, the defendant's visage). The court denied the motion. The court observed that the defendant "frowns constantly," and that this "natural expression can be misconstrued as being a stare of some kind that is somewhat intimidating." Swapping one group of prospective jurors for another, the court reasoned, would not "really resolve the problem" because defendant's "natural expression" would be the same "with a new jury or not."

To address the issue, the trial court spoke to all of the prospective jurors, who at that time consisted of the 18 people seated in the jury box as well as others seated in the courtroom's gallery. The court told the entire venire that the court was familiar with defendant from earlier proceedings in this case; that defendant has a "natural expression" on his face that some people find "intimidating" or "nefarious"; that defendant is not actually trying to intimidate anyone and that his expression is "just the way [defendant] looks"; and that the jurors should not "use his . . . natural facial expression . . . against him."

The court then asked the entire venire two questions and asked for a positive response by a show of hands: (1) whether any of them had been "intimidated by a facial expression . . . at some point in this case"; and (2) whether any of them witnessed or overheard "any communications outside of the courtroom regarding this issue about

3

intimidating stares." Four jurors—Prospective Juror Nos. 3, 5 and 6 (in the jury box) and Prospective Juror No. 1047[2] (in the gallery)—raised their hands in response to the first question.[3] The court then instructed all of the jurors who had not raised their hands that they should "not form an improper opinion or conclusion that [defendant] is trying to intimidate just because" of his natural facial expression. Prospective Juror No. 1678 raised his hand in response to the second question, indicating that he had overheard someone make a comment about intimidating stares when there were "probably" 20 jurors nearby. The court told the jury that discussions about defendant's visage were "contrary to [its] admonition not to talk about the case or form or express any opinions about it" and admonished the jurors to "put that aside, not speculate or assume that something nefarious has occurred that is designed to influence you as a juror." The court next asked each of the 18 jurors seated in the jury box whether he or she could "proceed . . . despite this issue surfacing." Each of the 18 jurors—except Prospective Juror Nos. 3, 5 and 6 (who had raised their hands earlier)—said they could. In the midst of this questioning, defendant again moved for a mistrial, and the court again denied that motion.

The court then excused Prospective Juror Nos. 3, 5, 6 and 1047.

The next day, the court called for 36 additional jurors. None of them had been present during the discussions about defendant's visage the day before, and there was no further mention of that issue in front of those jurors or during the trial.

## C.     *Jury instructions*

The court instructed the jury not only on the charged crimes of attempted murder and assault with a firearm, but also on the crimes of (1) attempted voluntary manslaughter (§§ 192 & 664), as a lesser-included offense to attempted murder as a result

---

**2**      At times during these proceedings, the trial judge mistakenly referred to Prospective Juror No. 1047 as Prospective Juror No. 1042.

**3**      A fifth juror raised her hand to express a language issue.

4

of imperfect self-defense, and (2) simple assault (§ 240), as a lesser-included offense to assault with a firearm.  The court also instructed the jury on self-defense.

### D.  Verdicts

The jury convicted defendant of attempted voluntary manslaughter and assault with a firearm, and found true the personal use of a firearm and personal infliction of great bodily injury allegations on the latter count.  The jury acquitted defendant of attempted murder and found the gang allegation not true.  Defendant waived his right to a jury trial on his prior 2009 conviction, and the trial court found it to be true.

### E.  Sentencing

The trial court imposed a 26-year prison sentence.  Specifically, the court imposed a sentence of eight years on the assault with a firearm count (a high-end term of four years, doubled due to the prior "strike"), and added 10 years because defendant personally used a firearm (§ 12022.5, subd. (a)), three years because he inflicted great bodily injury (§ 12022.7, subd. (a)), and five years because his 2009 conviction constituted a "serious" felony (§ 667, subd. (a)(1)).  The court imposed a sentence of five and one-half years on the attempted voluntary manslaughter count, but stayed that sentence under section 654.

### F.  Appeal

Defendant timely appealed.

### DISCUSSSION

Both the United States and California Constitutions guarantee criminal defendants the "right to trial by an impartial and unbiased jury."  (U.S. Const., 6th Amend. ["[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury"]; Cal. Const., art. I, § 16 ["[t]rial by jury is an inviolate right and shall be secured to all"]; *People v. Merriman* (2014) 60 Cal.4th 1, 95 (*Merriman*).)  "'An impartial jury is one in which no member has been improperly influenced.'"  (*People v. Hensley* (2014) 59 Cal.4th 788, 824.)  Juror misconduct is an improper influence.  (*Ibid.*)  Among other things, juror misconduct includes a juror's refusal to obey a trial

5

court's instruction(s).  (*People v. Lavender* (2014) 60 Cal.4th 679, 686-687 (*Lavender*); *In re Hamilton* (1999) 20 Cal.4th 273, 305 (*Hamilton*).)  "Juror 'misconduct raises a presumption of prejudice[, but] that [presumption] may be rebutted by proof that no prejudice actually resulted'" (*People v. Sandoval* (2015) 62 Cal.4th 394, 437, quoting *People v. Cooper* (1991) 53 Cal.3d 771, 835)—that is, by proof that "'"there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment'"'" (*Hensley*, at p. 825, quoting *In re Boyette* (2013) 56 Cal.4th 866, 892).

The prospective jurors in this case engaged in misconduct because, at a minimum, they ignored the trial court's instruction not to "talk about this case" or "what's going on in this courtroom."  Consequently, the sole question before us is whether the People rebutted the presumption of prejudice by showing that there is no substantial likelihood that any juror was improperly influenced.  Although we review a trial court's ultimate ruling on a mistrial motion, as well as whether juror misconduct "has contaminated the entire venire," for an abuse of discretion (*People v. Peoples* (2016) 62 Cal.4th 718, 802; *People v. Medina* (1990) 51 Cal.3d 870, 889), we independently review "the question whether prejudice from juror misconduct has been rebutted" (*Lavender*, *supra*, 60 Cal.4th at p. 687; *Merriman*, *supra*, 60 Cal.4th at pp. 95-96).

A trial court can attempt to eliminate the prejudice that presumptively arises from juror misconduct (1) by questioning the jurors about the effect of the misconduct on their ability to remain impartial (*People v. Foster* (2010) 50 Cal.4th 1301, 1342-1343; *People v. Lewis* (2009) 46 Cal.4th 1255, 1309; see also *People v. Debose* (2014) 59 Cal.4th 177, 194 ["'*[v]oir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored'"]), or (2) by instructing the jurors to ignore or otherwise not be influenced by the juror misconduct they committed or witnessed (*Lavender*, *supra*, 60 Cal.4th at pp. 688, 691; *People v. Harris* (2013) 57 Cal.4th 804, 857).  We generally presume jurors heed those instructions in the absence of evidence to the contrary.  (*People v. Homick* (2012) 55 Cal.4th 816, 853.)

The trial court in this case directly confronted the issue of defendant's threatening visage (1) by questioning the entire venire to ascertain which jurors (a) found defendant's

facial expression to be intimidating, or (b) overheard any conversation among jurors on that issue, (2) by excusing any juror who found his expression to be intimidating or who had participated in a prohibited conversation, (3) by further asking the other jurors in the jury box who answered "no" to these questions whether they could "proceed" (and, ostensibly, be fair to the defendant), and (4) by instructing the jury no fewer than three times that defendant's expression was *not* meant to be intimidating and was not to be considered in the jury's deliberations. The court's actions dispelled any likelihood—let alone a substantial likelihood—that any juror was improperly influenced by the concerns of the excused jurors about defendant's facial expressions.

Defendant raises five arguments in response. First, he asserts that the People forfeited their right to contest the issue of prejudice because they did not discuss that issue in their brief on appeal. This argument is factually incorrect because the People's brief discussed the factors relevant to prejudice. It is legally incorrect as well because, even if the People had not addressed the issue, we are still tasked with deciding it on the basis of the record and the arguments in the opening brief. (E.g., *Lane v. Valverde* (2012) 203 Cal.App.4th 71, 74, fn. 1.)

Second, defendant contends that the trial court's questioning and further instructions only served to exacerbate, not lessen, the prejudice arising from defendant's facial expression. We disagree. The issue was whether defendant's "natural [facial] expression" was intimidating; because, as the court commented, that expression was not going to change, calling for a new venire would not solve the problem and would likely result in the same issues arising again. The only viable option was to confront the issue head on with the current jury, and that is what the court did. If, as defendant seems to suggest, mistrial is the only legally viable remedy to address a defendant's facial expression, we would be granting a defendant the power to force a mistrial and indefinitely postpone trial just by casting menacing glares at the venire. This is not, and should not be, the law. (*People v. Harris* (2008) 43 Cal.4th 1269, 1304 ["[o]ur system of justice has not delegated to every [defendant] the power to effect a mistrial"]; *People*

7

*v. Hendricks* (1988) 44 Cal.3d 635, 643 [defendant cannot seek mistrial based on prejudice created by "his own voluntary act"].)

Third, defendant asserts that the trial court's efforts to cure the prejudice were insufficient because the court asked only some of the jurors (those jurors seated in the jury box), but not all jurors (those jurors seated in the gallery) its last question as to whether they could proceed fairly. The court's failure to ask the same question of all the prospective jurors was of no consequence. That is because the court's last question was directed to jurors in the jury box who had already told the court they were unconcerned with defendant's facial expression and had not discussed it with other jurors; at most, this last question was designed to give the court further assurance that those jurors were untainted. The court's failure to "double check" the absence of any taint in the jurors seated in the gallery does not mean the court's inquiry was insufficient or that the jurors seated in the gallery were tainted.

Fourth, defendant argues that it is unclear whether the persons seated as Prospective Juror Nos. 2 and 4 during the court's inquiry into the juror misconduct were ultimately seated on his jury. Because, as we have explained above, the court asked everyone in the venire that reported the misconduct whether they had disobeyed its instructions and thereafter excused anyone who had, it does not matter whether Prospective Juror Nos. 2 and 4 stayed on the jury. They had been cleared of any taint. Indeed, those two jurors were in the group to whom the court addressed its last question and who specifically assured the court they could proceed fairly.

Lastly, defendant contends that the jury's verdict demonstrates the prejudicial effect of the misconduct because the jury did not acquit him of all charges. This argument ignores that the jury did the next best thing: It acquitted him of attempted murder and instead convicted him of the lesser-included offense of attempted voluntary manslaughter, and it found the gang allegation not true. Because defendant admitted to shooting his victim, the jury necessarily found that defendant had engaged in imperfect self-defense. This internally consistent verdict indicates, if anything, that the jury carefully considered and in part accepted defendant's testimony, a result wholly

8

inconsistent with a rush to judgment based on defendant's facial expression. The fact that there was no further mention of defendant's facial expression during the proceedings only confirms that the trial court's actions definitively dispelled any prejudice from the juror misconduct during voir dire.

In sum, the People rebutted the presumption of prejudice and the trial court accordingly did not abuse its discretion in denying defendant's motions for a mistrial.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ


9