Filed 9/30/15  P. v. Renteria CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>FERNANDO DANIEL RENTERIA,<br><br>       Defendant and Respondent. | A143345<br><br>(City & County of San Francisco<br>Super. Ct. No. 222161) |

The trial court vacated a jury verdict and granted defendant Fernando Daniel Renteria's motion for a new trial following an evidentiary hearing in which the court found that prejudicial juror misconduct occurred during deliberations. The trial concerned robberies unrelated to gang activity, yet a juror injected an opinion explicitly based on extraneous information obtained as a law enforcement officer that defendant is the member of a dangerous street gang. The district attorney appeals. We shall affirm the order.

**Summary of Evidence Presented at Trial**

Resolution of the issues raised on appeal does not require a detailed statement of the evidence. A short summary suffices.

On the night of April 22, 2014, in little over an hour three separate robberies were committed in San Francisco within one and a half miles of each other. The three victims each testified they were walking alone on a city street when two men, one with a handgun, robbed them of their cell phones and wallets. Most of the gunman's face was

1

obscured by a bandana, according to two victims, or a ski mask according to the third victim.

The third victim electronically traced the location of his stolen phone and informed the police of the phone's location. The police arrived at that location less than 20 minutes after the robbery and found a vehicle with a female driver and two male passengers, one of whom was defendant. The police detained the occupants and recovered from inside the vehicle the traced phone and other stolen items belonging to the victims. In a jacket on the vehicle's back seat the police also found an air pellet gun resembling a firearm. One of the victims testified he recognized defendant as the gunman based on defendant's eyes and another based on defendant's ears and eyebrows. The third victim could not make an identification.

Defendant denied committing the robberies. The defense claimed the robberies were committed by the other male passenger in the vehicle, Phillip, and another unidentified man. Defendant testified that he and his girlfriend had picked up his friend Phillip just before they were stopped by the police and noticed that Phillip had cell phones and a pellet gun when he entered the vehicle.

The defense challenged the victims' identification of defendant as the gunman by eliciting on cross-examination the victims' admission that none had seen any tattoos on the gunman. Defendant has tattoos on his neck and right hand that were displayed to the jury. The large tattoo on the back of defendant's hand is an ornate character that was described at trial as the letter "B" by defense counsel and the letter "R" by one of the victims looking at defendant from the witness stand. A photograph of the tattoo shows either interpretation to be reasonable. In closing argument to the jury, defense counsel asked: "How is it possible that if [defendant] is up close and personal with three separate people that not one of them remembers such a distinctive obvious tattoo?"

### Verdict and New Trial Motion

The jury found defendant guilty of three counts of second degree robbery. (§ 211.) Defendant filed a motion for new trial asserting juror misconduct, among other claims. (§ 1181.) Defendant claimed the jury strayed from the subject of whether the victims'

failure to note tattoos on the gunman proved mistaken identity into speculation about the nature and possible significance of defendant's hand tattoo. Defendant presented evidence that one juror told the other jurors that the tattoo on defendant's hand was not the letter "B" or "R" but the number "13" and, based on the juror's expertise as a former law enforcement officer, opined that defendant is a gang member.

Defendant submitted several juror declarations and the court conducted an extensive evidentiary hearing. The jurors' individual accounts of the nature and extent of their discussion of tattoos and gangs contain some conflicts, which the trial court resolved and we accept.[1] One of the juror declarations attests that Juror No. 4 told the deliberating jury that defendant's "tattoo on his right hand was not the letter 'B,' " which the defense wanted them to think, "but the number '13' and that he 'knew what that meant.' " Other jurors asked what the "13" meant and Juror No. 4 said "he was a former law enforcement officer and that if they wanted to know what it meant he would tell them." Juror No. 4 said "the number '13' was associated with the gang MS-13 and that they were the most dangerous street gang." The juror also told the group "that because [defendant] had the number 13 tattooed on his hand it meant that [defendant] was an MS-13 gang member." Juror No. 4 also said he knew the investigating police officer who testified at trial, Sergeant Michael Moody, and knew that Moody was familiar with Latino gangs from the officer's work in San Francisco's Mission District. Moody's interrogation of defendant had been introduced at trial and included Moody's comment to defendant, "we know you are in the game." Juror No. 4 told the other jurors that Moody "made the comment about being 'in the game' because [the officer] must have seen [defendant's] tattoos that were consistent with MS-13." The testimony and declarations of several other jurors are largely consistent with this account, differing only in recalling that Juror No. 2 joined in

---

[1] On review of an order granting a new trial, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." (*People v. Nesler* (1997) 16 Cal.4th 561, 582.) We limit our review of the evidence to objective facts and disregard all evidence of the jurors' subjective impressions. (Evid. Code, § 1150, subd. (a).)

Juror No. 4's statement that the tattoo was the number 13, and may have been the first to offer the suggestion. Another juror declared that Juror No. 4 also said that the MS-13 gang was "a violent street gang known for committing robberies."

The trial court found prejudicial juror misconduct and granted defendant's motion for a new trial. In finding misconduct, the court stated: "had [Juror No. 4] or [Juror No. 2] said I don't think that's a B, I think that's a 13 and left it at that, that would merely be a comment on the evidence. But once they bring up things about M.S. 13, that it's a violent gang, they start bringing in gang culture, and once [Juror No. 4] reemphasizes his participation in law enforcement, that gives it extra value." The court found that Juror No. 4 effectively told the jury "I'm a police officer" with training in gangs and "therefore I know [defendant is] a gang member." The court also noted that Juror No. 4 introduced outside information when telling the jury that Sergeant Moody is expert in gangs and in interpreting the officer's comment to defendant about being "in the game" as the officer's opinion that defendant is a gang member. The court found allegations of gang affiliation to be highly prejudicial, noting that it had granted a defense motion to exclude such evidence and that "there are numerous cases that hold gang evidence would lead jurors to believe that defendant is a bad person and more likely to commit crimes." The court found discussions of defendant's possible gang participation to be especially damaging in this case, in which defendant testified and his credibility as a witness was in issue.

## Discussion

In reviewing a trial court's grant of a new trial motion, we first determine whether there was any juror misconduct. (*People v. Collins* (2010) 49 Cal.4th 175, 242.) The determination presents a mixed question of fact and law. As noted earlier, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." (*People v. Nesler* (1997) 16 Cal.4th 561, 582.) But whether those facts constitute misconduct is a legal question we review independently. (*Collins, supra,* at p. 242.)

The trial court found that Juror No. 4 committed misconduct by introducing into the deliberations his opinion, based on the juror's expertise as a former law enforcement

4

officer and extraneous information about gangs, that defendant is a gang member. While the case presents a close question, we agree the juror crossed the line from expressing an opinion based on the trial evidence to one based on specialized information obtained from outside sources.

"A fine line exists between using one's background in analyzing the evidence, which is appropriate, even inevitable, and injecting 'an opinion explicitly based on specialized information obtained from outside sources' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1266.) "It is not improper for a juror, regardless of his or her educational or employment background, to express an opinion on a technical subject, so long as the opinion is based on the evidence at trial. Jurors' views of the evidence . . . are necessarily informed by their life experiences, including their education and professional work. A juror, however, should not discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct." (*In re Malone* (1996) 12 Cal.4th 935, 963 (*Malone*).)

In *Malone,* the California Supreme Court determined that a juror committed misconduct when she told other jurors that her professional reading and course work caused her to doubt the accuracy rates claimed by the examiners who conducted the petitioner's polygraph examination and asserted the polygraph results were not reliable because of the manner in which a particular question had been phrased by the examiner. (*In re Malone*, *supra,* 12 Cal.4th at pp. 945, 963.) The court held that her statements to the other jurors constituted misconduct because the juror expressed negative opinions regarding the reliability of the petitioner's polygraph evidence based upon her own professional study of psychology and not upon the evidence received at trial. (*Id.* at p. 963.)

As in *Malone*, Juror No. 4 presented an opinion explicitly based on specialized information obtained from outside sources. (*In re Malone, supra,* 12 Cal.4th at p. 963.) Juror No. 4 told the jury that unchallenged testimony and argument by counsel describing the tattoo as either the letter "R" or "B" was wrong and that, based on his professional

5

knowledge as a law enforcement officer, the tattoo was actually a "13" and signified gang membership. The juror also said he knew Sergeant Moody to be an expert in gangs, although no such expertise was established at trial, and opined that Moody's reference to defendant being "in the game" meant that Moody recognized defendant's tattoo as a gang symbol. Juror No. 4 committed misconduct in injecting external information and his specialized knowledge into the deliberations to tell other jurors that defendant is the member of a dangerous gang.

Having found juror misconduct, we must determine whether the misconduct was prejudicial. A trial court's finding of prejudice warranting a new trial is reviewed for abuse of discretion, a standard of review more deferential than is the standard of review for an order denying a motion for new trial. (*People v. Ault* (2004) 33 Cal.4th 1250, 1271-1272.) "[W]here the effect of the ruling below is simply that the case will be retried free of the error or misconduct that infected the original proceeding, we may conclude that ' "the concerns of judicial administration tip in favor of the trial court" ' [citation] and suggest a deferential standard of appellate review." (*Id.* at pp. 1267-1268.) "[A]ffirmance of a trial court order granting a new trial on grounds that established juror misconduct was prejudicial simply endorses the trial court's effort to fulfill its responsibility to protect the right to an impartial jury. Even if the trial court has erred on the side of caution in a close case, appellate deference to the court's determination produces no final victory for either party, but simply allows the matter to be retried before a new jury." (*Id.* at p. 1266, italics omitted.) Thus, "the trial court's order granting a new trial will not be disturbed if fairly debatable, even if the reviewing court itself, addressing the issues de novo, would not have found a basis for reversal." (*Id.* at p. 1263.)

The district attorney contends the court abused its discretion in finding that the misconduct was inherently and substantially likely to have influenced a juror without considering the evidence as a whole and weighing the strength of the incriminating evidence. At oral argument, counsel quoted the trial court's comment that "a biased adjudicator is one of the few structural trial defects that compel reversal without

application of the harmless error standard." Counsel argued: "This is the comment that the trial court made in ultimately making its ruling that it's hands were tied and it was not allowed to apply the harmless error standard. Therein, the trial court erred and it abused its discretion." However, the court immediately limited its comment about compelled reversal to a juror's actual bias and noted that another basis for reversal arises when juror misconduct "is so prejudicial in and of itself that it is inherently substantially likely to have influenced a juror." (*People v. Nessler* (1997) 16 Cal.4th 561, 578-579.) The court proceeded to make a thorough assessment of the evidence in considering whether the misconduct was likely to influence a juror. The court found the extraneous information prejudicial, noting that "gang evidence is so prejudicial because people . . . are likely to believe this defendant is a bad person, especially since defendant testified, that would go to his believability." While there was strong circumstantial evidence of defendant's participation in the robberies, the identification of defendant as the gunman was far from conclusive. The case turned on whether the jury believed defendant's testimony denying participation in the robberies and claiming that the robberies were committed by his friend Phillip and another man.

Under these circumstances, the trial court reasonably found it prejudicial for the jury to have received outside information suggesting that defendant is a gang member since gang members are commonly viewed as untrustworthy and likely to commit violent crimes. The district attorney argues the trial court failed to consider the ameliorative effect of the jury foreperson urging the jurors "to look just at the evidence that's been presented" when gangs were being discussed. A foreperson's admonishment is a relevant consideration when evaluating prejudice (*People v. Lavender* (2014) 60 Cal.4th 679, 691-692) but is not, as argued, necessarily "sufficient to rebut prejudice resulting from juror misconduct." The trial court heard the foreperson's testimony and weighed it along with the testimony of other jurors in finding prejudice. Trial courts "are best positioned to determine whether errors or irregularities in proceedings before them were prejudicial." (*People v. Ault, supra,* 33 Cal.4th at p. 1271.) The trial court's finding of prejudice is fairly supported by the record.

**Disposition**

The order granting a new trial is affirmed.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

A143345